522 A.2d 643

**COMMONWEALTH of Pennsylvania**

v.

**Bradley R. BAKER, Appellant.**

Superior Court of Pennsylvania.

Argued April 12, 1984.

Filed March 19, 1987.

L. Edward Glass, Johnstown, for appellant.

David Flower, Assistant District Attorney, Somerset, for Com., appellee.

Before ROWLEY, POPOVICH and JOHNSON, JJ.

POPOVICH, Judge:

This case is on remand from the Pennsylvania Supreme Court to resolve the remaining issues left open by this panel's initial decision to suppress a warrant for "staleness", a decision which was reversed on appeal. *Commonwealth v. Baker*, 513 Pa. 23, 518 A.2d 802 (1986).

The first issue we shall address concerns Baker's contention that the court below erred in hearing the testimony of an individual (Agent Todoric), other than the affiant on the search warrant, in considering whether probable cause for its issuance existed. This testimony, argues the defendant, "was so exhaustive as to sufficiently taint [sic] the entire proceeding[.]" And, albeit not articulated by the defendant, this would necessitate a suppression of the evidence consisting of forty items of drugs and related paraphernalia as reflected in the receipt/inventory of seized property form. We disagree.

■ To start with, notwithstanding the testimony of Agent Todoric, the two affiants whose names appear on the face of the application for the search warrant, i.e., Detective Berkebile and Agent Lemon, testified before the court below to supplying the magistrate with all of the information contained in the warrant and affidavit. Their account-

ing, in and of itself, would be sufficient to establish the sufficiency of information presented to the magistrate to uphold the validity of the warrant. As for the claim by the defendant that the proceedings before the suppression court were somehow infected with the testimony of one not an affiant to the warrant, and not appearing before the magistrate, is unconvincing when analogized to the law relating to the treatment of prejudicial evidence heard by a judge presiding over a criminal case.

In this Commonwealth, the courts have treated such a claim of prejudice by first examining the judge's remarks as to any disclaimer, e.g., "he disregarded the defendant's prior criminal record in reaching a conclusion as to guilt." See *Commonwealth v. Brown*, 328 Pa.Super. 215, 476 A.2d 969 (1984). The reason is that a judge, as a factfinder, is presumed to disregard inadmissible evidence and consider only competent evidence in making his decision. *Commonwealth v. Glover*, 266 Pa.Super. 531, 405 A.2d 945 (1979); McCormick on Evidence § 60 (2d Ed.1972). Thus, we have held that a trial court's express statement at a post-verdict motions hearing negating any affect the evidence of the appellant's arrests may have had on the verdict was sufficient to purge the taint of the questioned evidence. See *Commonwealth v. Guest*, 500 Pa. 393, 398, 456 A.2d 1345, 1348 (1983); *Brown*, supra.

■ *A fortiori*, we see no reason not to extend the same rationale to a defendant's claim of error occurring during the course of a suppression hearing.

Instantly, the court below specifically discounted the testimony of Agent Todoric as a factor in reaching its conclusion in finding the warrant valid and the evidence seized as a result thereof admissible at trial. It did so in footnote 4 of its opinion to us; viz.:

> At the suppression hearing, an individual testified, Agent Steven Todoric, who was not present at the magistrate's office at the time the search warrant was issued and thus gave no sworn information in support of the warrant.

However, at the time of the testimony at the hearing, the court was under the mistaken impression that he indeed was present and disclosed the information to the magistrate that he disclosed at the hearing. Since this was not the situation, his testimony cannot be used and was not used, in the decision of this motion.

Given the suppression court's disclaimer, we have no hesitancy in holding that the defendant's initial claim to be meritless. See *Brown,* supra.

The defendant's last protestation, as to the alleged failure of the police to announce their identity and purpose prior to executing the search warrant, is no more persuasive than his previous argument.

The facts reveal that at approximately 4:30 p.m. on the 12th of March, 1981, Detective Berkebile, Agents Lemon and Caroff of the Bureau of Drug Control and two patrol officers arrived at the defendant's residence. The police "knocked on the door and received no response." This caused the police to stand on the defendant's porch and discuss among themselves what they should do. During this hiatus, the police started conversing with some of the youngsters nearby. At this time, the defendant's brother came upon the scene. As Detective Berkebile recalls it:

> We talked to him. We explained the reason why we were there, that we had a search warrant for his brother's mobile home. And he said that he would get a key and leave [sic] us in.

Approximately one-half hour after the search began, the defendant arrived and was informed of the purpose of the police activities. Following the search and seizure of contraband, the defendant was arrested and ultimately charged with the offenses which are the subject of his appeal.

As to the execution of the warrant, Detective Berkebile testified that Officer Grattan knocked on the defendant's door several times without securing a response. Although Detective Berkebile conceded that no one in the search team

announced, "Police, open up", he did go on to recount being informed by the youngsters and the defendant's brother at the scene that the defendant was not at home. They waited a half-hour before the brother's arrival.

■ Counsel for the defendant would have us apply the requirements of Pa.R.Crim.P. 2007 (Knock and Announce Rule)[1] with such rigidity that we disregard the admonition that police are not required to comply with the formalities of procedural due process when to do so would be a "useless act".[2] We believe the federal statute (18 U.S.C. § 3109[3]), which requires announcement of authority and refusal prior to forcible entry, is similar to our Rule 2007 in that both seek to 1.) prevent violence and physical injury to the police and the occupants; 2.) prevent unnecessary invasion of individual privacy; and 3.) prevent the needless destruction of private property. See *Commonwealth v. Duncan*, 257 Pa.Super. 277, 285–86, 390 A.2d 820, 825 (1978), citing *United States v. Bustamante-Gamez*, 488 F.2d 4, 9–10 (9th Cir.1973), cert. denied, 416 U.S. 970, 97 S.Ct. 1993, 40 L.Ed.2d 559 (1974); see also *United States v. Little*, 753 F.2d 1420, 1435 (9th Cir.1984). We look to it for some guidance.

1. Rule 2007 reads:
    (a) A law enforcement officer executing a search warrant shall, before entry, give, or make reasonable effort to give, notice of his identity, authority and purpose to any occupant of the premises specified in the warrant, unless exigent circumstances require his immediate forcible entry.
    (b) Such officer shall await a response for a reasonable period of time after his announcement of identity, authority and purpose, unless exigent circumstances require his immediate forcible entry.
    (c) If the officer is not admitted after such reasonable period, he may forcibly enter the premises and may use as much physical force to effect entry therein as is necessary to execute the search.
2. See *United States v. Nolan*, 718 F.2d 589, 598 n. 15 (3rd Cir.1983).
3. 18 U.S.C. § 3109 reads in relevant part:
    The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance....
    June 25, 1948, c. 645, 62 Stat. 820.

Section 3109, when it comes to unoccupied dwellings, has been held to be inapposite on the basis that it is futile to require the authorities to knock and announce their identity and purpose and wait for a refusal of entry from someone who is not there. See *Payne v. United States*, 508 F.2d 1391, 1393–94 (5th Cir.1975) cert. denied, 423 U.S. 933, 96 S.Ct. 287, 46 L.Ed.2d 263 (1975); *United States v. LaMonte*, 455 F.Supp. 952 (E.D.Pa.1978).

Instantly, the police were informed by children in the vicinity and the defendant's own brother that he was not at home. In fact, the brother elaborated that the defendant had gone with his parents somewhere and he (the brother) would get the key to let the officers into the mobile home.

■ Based on the preceding, the entry of the police without complying with the knock and announce requirements of Rule 2007 was not at odds with or violative of the objectives sought to be attained by the Rule's implementation, i.e., protection of privacy, mitigation of violence and prevention of needless destruction of property by forced entry. None of these was being compromised under the facts here.

In *Commonwealth v. Wallace*, 293 Pa.Super. 73, 437 A.2d 996 (1981), cited by the defendant in support of his contention that the police's conduct was reprehensible and constitutionally infirm, "[t]he police officers did not know that [the defendant] was away from his apartment until they entered and searched it." 293 Pa.Super. at 76–77, 437 A.2d at 998. Such was not the case at bar.

As for the other case proffered by the accused to advance his contention of a Rule 2007 violation, i.e., *Commonwealth v. Clemson*, 234 Pa.Super. 387, 338 A.2d 649 (1975), the court there was pre-occupied with whether a delay of ten seconds before entry of the defendant's premises was sufficient time to surrender the premises voluntarily to the authorities, and, thus, is distinguishable from the case in-

stantly in that no occupant was present to be concerned about relinquishing his premises peacefully.

Courts in several jurisdictions have rejected the contention that an effort must be made to locate and bring an absent occupant to the premises before entry can be made. See *Payne,* supra; *United States v. Gervato,* 474 F.2d 40 (3rd Cir.1973)[4], cert. denied, 414 U.S. 864, 94 S.Ct. 39, 38 L.Ed.2d 84 (1973); *State v. Iverson,* 364 N.W.2d 518 (S.D. 1985); *Diamond v. State,* 363 So.2d 109 (Ala.Cr.App.1978); *People v. Peck,* 38 Cal.App.3d 993, 113 Cal.Rptr. 809 (1974); *Kraft v. State,* 19 Md.App. 108, 309 A.2d 643 (1973); *State v. Gutierrez,* 91 N.M. 542, 577 P.2d 440 (1978), overruled in part on other grounds, *State v. Cervantes,* 92 N.M. 643, 593 P.2d 478 (1979); *State v. Wilson,* 41 Ohio App.2d 240, 325 N.E.2d 249 (1974).

We herein deem it appropriate to affirm, by joining the ranks of those jurisdictions permitting the execution of a search warrant in the absence of the occupant of the premises being searched,[5] what our Supreme Court hinted at in *Commonwealth v. Harris,* 479 Pa. 343, 388 A.2d 688 (1978) (Per Curiam Opinion). We would caution, however, that the police must still prove in court that they took appropriate measures to satisfy themselves that an occupant was not on the premises. And, of course, the sufficiency of the police's efforts will be for the court to decide.

Our review of the record and case law leads us to deny the defendant's allegations of error. Accordingly, we affirm the judgment of sentence.

**4.** But see *United States v. Nolan,* 718 F.2d 589, 598 n. 15 (3rd Cir. 1983), wherein the Court held that permissibility of the government's entry of one's premises in his absence to effectuate a search warrant was an "open" question in the Third Circuit.

**5.** One could contemplate various scenarios in which the defendant's intentional absence from his residence would be motivated to frustrate the efforts of the police. For example, the occupant could avoid a search by merely leaving the premises on approach of the police or he could permanently defeat the warrant by staying away from the premises. See *Payne v. United States,* 508 F.2d 1391, 1394 (5th Cir.1975), cert. denied, 423 U.S. 933, 96 S.Ct. 287, 46 L.Ed.2d 263 (1975).