542 A.2d 1000

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Daniel Lee BALLIET.**

Superior Court of Pennsylvania.

Submitted Feb. 3, 1988.

Filed May 2, 1988.

Reargument Denied June 21, 1988.

236

Amy L. Hallenbeck, Assistant District Attorney, Montoursville, for Com., appellant.

Peter T. Campana, Williamsport, for appellee.

Before CAVANAUGH, OLSZEWSKI and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from the order of the Court of Common Pleas of Lycoming County granting a motion to suppress by the appellee.[1] We reverse.

The validity of the warrant is not at issue; only the manner in which it was executed is under scrutiny.

The record indicates that Pennsylvania State Trooper Daniel Rogers, in the company of Corporal Donald Dorsett and two other police officers, set out to execute a warrant of the appellee's (Daniel Lee Balliet's) apartment. It ap-

---

1. In its brief to us at page 2, the Commonwealth correctly "certifies pursuant to ... *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985) that this appeal is taken in good faith and that the Order below granting Appellee's motion to suppress evidence has substantially handicapped the Commonwealth in its prosecution of its case."

pears that a bomb had been discovered under a vehicle being used by the appellee's former mother-in-law, whom the appellee purportedly blamed for his ex-wife's departure. Also, the ex-wife stated to the authorities that she witnessed appellee making bombs in his apartment. Thus, with warrant in hand, Trooper Rogers and Corporal Dorsett, at approximately 5:30 p.m. on the 6th of December, 1986, made their way to the appellee's apartment. Once there, Trooper Rogers gave the following account of what transpired in response to questions being asked of him by the attorney for the Commonwealth:

Q. And can you describe to us what happened when you went to execute the search warrant?

A. I myself and corporal Dorsett met with two city police officers. We went to the home of Mr. Balliet at 640 Grace Street, went to the second floor where his apartment was located. We rapped at the door several times. We received no response. I personally vocally identified ourselves as being state police officers. Still no response. We then discussed whether or not we should forcibly enter into the home, or apartment, rather, for another minute or so and we did decide that we should forcibly enter the apartment.

Q. From the time that you first arrived and knocked on the door until you entered the apartment, how long— how much time would you say had elapsed?

A. No more than five minutes.

Q. And when you say you forcibly entered the apartment, can you describe to me what you did?

A. I kicked the door with my foot.

Q. When you went inside the apartment was there anyone there?

A. No.

Q. How long would you say you were there, Trooper?

A. We were there probably there better part of an hour.

Q. While you were there did anyone arrive at the apartment other than any police officers?

A. Yes, Mr. Balliet arrived probably five minutes before we were ready to leave his apartment.

Q. And when Mr. Balliet arrived did you speak to him?

A. Yes, I did.

Q. Can you tell me what you said?

A. Well, we explained our presence for being there and also furnished him an inventory sheet of the property that we seized.

Our Supreme Court, on the subject of technical non-compliance with our Rules of Criminal Procedure and its consequences, has stated:

> ... we reject the automatic application of the exclusionary rule to suppress evidence seized pursuant to a search which in some way violates the Pennsylvania Rules of Criminal Procedure relating to the issuance and execution of search warrants.

*     *     *     *     *     *

This Court most assuredly has not fashioned an automatic rule of exclusion of evidence for violations of Chapter 2000 of the Rules of Criminal Procedure generally.... Indeed, we have made it clear that the execution of a search warrant which violates these Rules will not automatically require the exclusion of evidence so obtained. In *Commonwealth v. Musi*, 486 Pa. 102, [115–16,] 404 A.2d 378[, 385] (1979), we held:

> A rule of exclusion is properly employed where the objection goes to the question of the reliability of the challenged evidence ... or reflects intolerable government conduct which is widespread and cannot otherwise be controlled.... Experience does not suggest there has been such a widespread and flagrant abuse of rule 2008(a) that would require the fashioning of a *per se* exclusionary rule for its violation.... *Therefore, the imposition of a sanction requiring the exclusion of evidence that results from a search where there has not been compliance with the rule must depend upon*

*the relationship of the violation to the reliability of the evidence seized.* Here, there was probable cause for the entry and search and there is no dispute that the rifle was in fact found on the premises described in the warrant and seized pursuant to that search. *Thus, appellant's rights were not prejudiced by the officer's failure to fully comply with the mandates of the rule.*

Federal cases interpreting a comparable rule of criminal procedure, *see* Rule 41(d) of the Federal Rules of Criminal Procedure, have concluded that although important, *the procedures required for execution and return of the warrant are ministerial and that irregularities should not void an otherwise valid search absent a showing of prejudice. See e.g., U.S. v. Hall,* 505 F.2d 961 (3d Cir.1974); *In Re Ellsberg,* 446 F.2d 954 (1st Cir.1971); *U.S. v. Klapholz,* 230 F.2d 494 (2d Cir.1956) *cert. denied,* 351 U.S. 924, 76 S.Ct. 781, 100 L.Ed. 1454. *We accept the wisdom of this approach and hold that where, as here, appellant has failed to demonstrate that she was prejudiced from the violation of this rule a request to suppress the fruits of the search is not justified.*

\*    \*    \*    \*    \*    \*

The Circuit Court of Appeals for the Ninth Circuit recently elaborated as to when exclusion of evidence would be an appropriate remedy for the violation of rules of criminal procedure. In *United States v. Johnson,* 660 F.2d 749, 753 (9th Cir.1981), *cert. denied,* 455 U.S. 912, 102 S.Ct. 1263, 71 L.Ed.2d 452 (1982), that court stated:

Even granting appellants' contentions that the rule was not followed, the evidence should not be suppressed.

"Only a 'fundamental' violation of Rule 41 requires automatic suppression, and a violation is 'fundamental' only where it, in effect, renders the search unconstitutional under traditional fourth amendment standards." *U.S. v. Vasser,* 648 F.2d 507, 510 (9th Cir.1980). Where the alleged violation of Rule 41 is not "fundamental" suppression is required only where:

"(1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision of the Rule." *Id.* (citations omitted).

*See also United States v. Searp,* 586 F.2d 1117 (6th Cir.1978), *cert. denied,* 440 U.S. 921, 99 S.Ct. 1247, 59 L.Ed.2d 474 (1979) (suppression due to Rules violation not justified absent bad faith conduct on the part of police or prejudice to defendant in sense that search would not have occurred or would not have been as obtrusive).

From the foregoing, we reemphasize that exclusion/suppression of evidence is not an appropriate remedy for every violation of the Pennsylvania Rules of Criminal Procedure concerning searches and seizures. It is only where the violation also implicates fundamental, constitutional concerns, is conducted in bad-faith or has substantially prejudiced the defendant that exclusion *may* be an appropriate remedy. Under the circumstances of the instant case, it is clear that even if Rule 2004 had been violated (we hold, *infra,* that it has not been), suppression of the evidence seized from appellee's apartment "would be a remedy out of all proportion to the benefits gained to the end of obtaining justice while preserving individual liberties unimpaired." *United States v. Searp, supra* at 586 F.2d 1123. To make such a caricature of form distorts justice. *See also Commonwealth v. Corley,* 507 Pa. 540, 491 A.2d 829 (1985) (refusal to extend exclusionary rule to cases where evidence was obtained as a result of an allegedly unlawful arrest by a private citizen).

*Commonwealth v. Mason,* 507 Pa. 396, 401–404, 405–407, 490 A.2d 421, 423–424, 426 (1985).

■ Based on the recitation of the law in *Mason* as to the criteria to utilize in determining whether a violation of a Rule of Criminal Procedure justifies the suppression of evidence, it is quite evident that exclusion is the exception

rather than the rule. And then, exclusion of seized evidence *may* be appropriate only where the violation also touches upon fundamental, constitutional concerns, is conducted in bad-faith or has substantially prejudiced the defendant. See *Commonwealth v. Morgan,* 517 Pa. 93, 96 n. 2, 534 A.2d 1054, 1056 n. 2 (1987).

■ Instantly, the police knocked and identified themselves without receiving any response to their inquiry. As a result, the officers discussed among themselves what course to pursue next. After the passage of almost five (5) minutes, and still no one having indicated their presence in the apartment, the police decided to enter forcibly and did so by kicking the front door open.

Under the *Mason* criteria, we have been presented with no evidence by the defendant that he was "prejudiced" by the entry and search, i.e., (1) " 'in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision of the Rule.' " Id. 507 Pa. at 406, 490 A.2d at 426 (Citation omitted). To the same effect, no "bad-faith" on the part of the police is alleged since they did make an effort to comply with the spirit of Rule 2007 by knocking, identifying themselves and waiting a reasonable period of time to afford an occupant/owner of the apartment to relinquish his/her possession of the premises peacefully and voluntarily. Accordingly, we find no "fundamental" violation of Rule 2007 requiring an automatic exclusion of the evidence seized. To do so, we believe, would be disproportionate to the violation or benefit to be gained by affirming the lower court's suppression of the evidence seized by the authorities. As such, the ruling entered by the court below is held to be erroneous and subject to reversal.

Order reversed.

OLSZEWSKI, J., files a dissenting opinion.

OLSZEWSKI, Judge, dissenting:

I respectfully dissent. In light of constitutional considerations, the "knock and announce" rule, and clear-cut case

law in this Commonwealth, I believe that the trial court correctly suppressed the evidence seized in the instant case. In reaching this conclusion, I acknowledge that when it comes to unoccupied dwellings, it is futile to require the authorities to knock and announce their identity and purpose and wait for a refusal of entry from someone who is not there. *See Commonwealth v. Baker,* 361 Pa.Super. 401, 522 A.2d 643 (1987). The simple fact that there was no response to their knock, however, is insufficient to establish a dweller's absence. *Commonwealth v. Wallace,* 293 Pa. Super. 73, 437 A.2d 996 (1981). The occupant "could have been asleep, or avoiding an old girlfriend or a bill collector." *Id.,* 293 Pa.Superior Ct. at 77, 437 A.2d at 998.[1]

I further recognize that police are not required to comply with the formalities of procedural rules when to do so would be a "useless act." *Baker, supra,* 361 Pa.Super. at 406, 522 A.2d at 646. We have mandated, however, that the police have knowledge that an occupant is away from his dwelling before they enter and search it without complying with the knock and announce requirements. *Id.*

Instantly, the Commonwealth does not dispute that there was no announcement of purpose nor claim that there were exigent circumstances that would have justified entry without proper announcement. Rather, the Commonwealth asserts that the violation was at most a technical one which does not require suppression. The Commonwealth attempts to support its position by analogizing the present facts to those of *Baker*. In *Baker,* however, the police were informed by children in the vicinity of defendant's residence and defendant's brother that defendant was not at home.

I am not persuaded by the Commonwealth's argument. The law in Pennsylvania is clear that the failure of the officers to announce purpose cannot be excused by the fact

---

1. We note that the facts in *Wallace* are analogous to the facts in the case at bar. In both instances, when Rule 2007 was violated, the occupant was not at home but the police did not have knowledge of his absence prior to entering the dwelling.

that ultimately appellee's home was found to be unoccupied. *Wallace, supra,* 293 Pa.Super. at 77, 437 A.2d at 998. It is not "too much to expect of the officers to announce their purpose in demanding admission.... '[t]he burden of making an express announcement is certainly slight. A few more words by the officers would have satisfied the requirements in this case.'" *Commonwealth v. Newman,* 429 Pa. 441, 447, 240 A.2d 795, 798 (1968), quoting *Miller v. United States,* 357 U.S. 301, 309–310, 78 S.Ct. 1190, 1195–1196, 2 L.Ed.2d 1332 (1958); *Commonwealth v. Golden,* 277 Pa.Super. 180, 186, 419 A.2d 721, 724 (1980).

It is my opinion that the execution of the warrant, because of the failure to state purpose or ascertain appellee's absence from the premises, violated appellee's right to be free from unreasonable search and seizure under the Fourth Amendment, *see Newman, supra;* as well as the "knock and announce" rule codified in Pa.R.Crim.P. 2007. The failure to announce purpose was not, therefore, a mere technical violation of Rule 2007 as the Commonwealth would have us believe. While I realize the importance of the use of seized evidence in making the Commonwealth's case, I cannot reconcile reversing the trial court's decision in the face of compelling case law. I would hold that the trial court correctly excluded the evidence because of a violation of constitutional magnitude.