593 A.2d 872

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Dominick Mario MOLINO.**

Superior Court of Pennsylvania.

Argued Jan. 23, 1991.

Filed June 26, 1991.

Petition for Allowance of Appeal
Granted Nov. 22, 1991.

Nancy L. Butts, Asst. Dist. Atty., Williamsport, for Com., appellant.

Anthony D. Miele, Williamsport, for appellee.

Before OLSZEWSKI, BECK and TAMILIA, JJ.

OLSZEWSKI, Judge:

This is an appeal by the Commonwealth from an order entered in the Court of Common Pleas of Lycoming County suppressing evidence, in the nature of a blood test result, obtained from appellee following his arrest for driving under the influence.[1] Appellee was subsequently charged under 75 Pa.C.S.A. § 3731(a)(1) (driving under the influence); 75 Pa.C.S.A. § 3714 (reckless driving); 18 Pa.C.S.A. § 5104 (resisting arrest), § 5503 (disorderly conduct), and § 5505 (public drunkenness). The question before us is whether the results of a blood alcohol test are admissible into evidence, where the blood test is administered after the driver exercises his statutory right to refuse chemical testing under 75 Pa.C.S.A. § 1547(b)(1). For the reasons below, we hold that the trial court erred in suppressing the test results and accordingly reverse the suppression order.

The trial court adequately summarized the facts of this case as follows:

The defendant was arrested by an officer of the Montoursville Police Department on the early morning of January 25, 1990. He was allegedly unruly and resisted arrest. Following the arrest he was taken to the DUI Processing Center operated at the Divine Providence Hospital under the general supervision of the County District Attorney's Office and Chief County Detective.

The only evidence presented at the suppression hearing was a video tape of the events which transpired at the DUI Processing Center. The actors on the video tape were the defendant, two off duty police officers from the Williamsport Bureau of Police who were manning the DUI Processing Center at the time and a nurse from the Hospital who had been called for the purpose of drawing

1. The suppression order entered below is appealable as the Commonwealth has certified, pursuant to *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985), that the present appeal is taken in good faith and that the suppression order has substantially handicapped the Commonwealth in its prosecution of its case.

blood. The defendant was seated and was passive in his demeanor. Officer Foust advised the defendant of the provisions of the Implied Consent Law, i.e., that he was being requested to submit to a blood test to determine the presence of alcohol in his blood; that if he refused, his motor vehicle operator's license would be suspended for a period of one year; that any refusal would be admitted into evidence against him in a trial; and that he would be charged with driving under the influence whether he submitted to the test or not. The defendant initially did not respond to the request but after it had been repeated he eventually indicated that he would not submit to the test. The officer asked him to sign a form indicating that he was not consenting to the test and the defendant signed that form. At one point, the defendant stood up, not in an aggressive way, and was told summarily to "sit down" by the officer.

After the defendant had signed the form indicating that he was not going to consent to the test, Officer Foust and the other officer, Officer Lawrence Kuhns, then advised him that he should put his arm out. The defendant asked why and the officers said that they were going to take the blood from him. The defendant protested; the officers insisted that they had a right to take the blood; the defendant at no time was aggressive, but he was insistent that he did not want the blood drawn from him. He expressed concern about the needles. The officers insisted that they were going to take the blood from him whether he wanted it drawn or not. Officer Kuhns stated "we can do this the easy way or we can do it the hard way." With one officer holding his arm down, the nurse placed a needle in his arm. The defendant jerked away; the needle had to be changed. The second time the attempt was made, the defendant's shoulder and arm were held and the blood sample was involuntarily obtained from the defendant.

(Trial court opinion at 1–3.)

After determining that this above scenario was in violation of appellee's statutory right under 75 Pa.C.S.A.

§ 1547(b)(1) to refuse the blood test, the trial court granted appellee's motion to suppress the test results. In an appeal from the denial of a motion to suppress, our role is to determine:

> ... whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. *Commonwealth v. Reddix*, 355 Pa.Super. 514, 518, 513 A.2d 1041, 1042 (1986). In making this determination, we may consider only the evidence of the prosecution's witnesses and so much of the evidence of the defense as, fairly read in the context of the record as a whole, remains uncontradicted. *Id.* When the factual findings of the suppression court are supported by the evidence, we may reverse only if there is an error in the legal conclusions drawn from those factual findings. *Reddix*, 355 Pa.Super. at 518, 513 A.2d at 1042.

*Commonwealth v. Fromal*, 392 Pa.Super. 100, 111, 572 A.2d 711, 717 (1990).

In Pennsylvania, "Any person who drives ... a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood ... if a police officer has reasonable grounds to believe the person to have been driving ... a motor vehicle ... while under the influence of alcohol...." 75 Pa.C.S.A. § 1547(a)(1). Under, § 1547(b)(1), however, a person may refuse to submit to such testing, thereby withdrawing his or her implied consent under § 1547(a). While we agree with the trial court's finding that a violation of 75 Pa.C.S.A. § 1547(b)(1) did in fact occur, we believe that such statutory violation does not warrant the suppression of evidence obtained in the process. 75 Pa.C.S.A. § 1547(b)(1) provides:

> (1) If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, *the testing shall not be conducted* but upon notice by the police officer,

the department shall suspend the operating privilege of the person for a period of 12 months.

(Emphasis added.)

In the case *sub judice*, it is clear that a violation of § 1547(b)(1) in fact occurred under the trial court's findings of fact. The testing should not have been conducted once appellee expressed his refusal to submit to the blood test. Therefore, the persistence of the police in verbally pressuring appellee to submit to the blood test violated appellee's statutory right to refuse. The only issue before us is whether the violation of appellee's rights under § 1547(b)(1) should be remedied by suppression of the blood test results from the evidence.

It is undisputed that appellee did not have a constitutional right to refuse the blood alcohol test. *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). In *Schmerber, supra*, the defendant was involved in an automobile accident and received treatment at a hospital for his injuries. A blood sample was withdrawn at the direction of a police officer, despite the defendant's refusal to consent to the test. At trial, over the defendant's objection, the blood test results were admitted into evidence. With respect to whether the defendant's Fourth Amendment right against unreasonable searches and seizures was violated, the United States Supreme Court held that the administration of a non-consensual blood alcohol test was a reasonable search incident to the arrest of the defendant, where there was probable cause to believe the defendant had been operating a motor vehicle while under the influence of alcohol. The Court went on to state that the non-consensual blood test, while implicating the human dignity and privacy rights protected by the Fourth Amendment, was a reasonable search under the circumstances. *Schmerber, supra*, 384 U.S. at 770, 771, 86 S.Ct. at 1835, 1836.

In *Commonwealth v. Hipp*, 380 Pa.Super. 345, 551 A.2d 1086 (1988), an *en banc* panel of this Court, following *Schmerber, supra*, held that there is no *constitutional* right to refuse to submit to a chemical test for blood alcohol

content, but only a limited *statutory* right by virtue of 75 Pa.C.S.A. § 1547(b)(1). Specifically, we stated:

> While the legislature has provided by statute that a driver, whom the police have probable cause to believe has been operating a vehicle while under the influence of alcohol, may refuse to submit to a chemical test for blood alcohol content, this right of refusal is not a constitutional right but rather is created solely by operation of the statute. " 'Neither the Fourth Amendment bar against unreasonable searches and seizures nor Fifth Amendment privilege against self-incrimination prevents the Commonwealth from requiring that a driver submit to a breathalyzer test. A driver therefore does not have a constitutional right to refuse. He has no right to refuse other than as provided in the implied consent law. Neither the Fourth nor Fifth Amendments prevents the admission into evidence of test results or of refusal.... A driver has no constitutional right to refuse and no right to have evidence either of the test results or of the refusal excluded....' "

*Id.*, 380 Pa.Superior Ct. at 359, 551 A.2d at 1092–1093, *citing, Commonwealth v. Funk,* 254 Pa.Super. 233 at 241–242, 385 A.2d 995 at 999–1000 [1978], *quoting Commonwealth v. Rutan,* 229 Pa.Super. 400, 404, 323 A.2d 730, 732 (1974) (citations omitted).

Therefore, as there is no constitutional right to refuse the blood alcohol test, but only a statutory right, we must now decide whether the suppression of the test results is appropriate where the police ignore a driver's refusal to consent to such testing. The *Hipp* case is instructive on this point. In *Hipp,* appellant was involved in a two-car collision and transported to a hospital, wherein blood was withdrawn from appellant by hospital personnel for medical purposes and tested for alcohol content, pursuant to hospital procedure. A police officer investigating the accident spoke with and observed appellant in the emergency room. Having determined that appellant had been drinking alcohol, the officer requested hospital personnel to take a blood sample from appellant to be tested for alcohol content. A member

of the emergency room staff advised the officer that a blood test had already been performed and offered the test results to the officer. After placing appellant under arrest, the officer requested appellant to submit to a blood alcohol test, which appellant refused and the officer left the hospital. Therefore, under these facts, there was no actual violation of appellant's right to refuse chemical testing under § 1547(b)(1), as no blood was taken once appellant refused.

In arguing that the results of the initial blood test should be suppressed, appellant contended, *inter alia*, that the fact that he refused the officer's request to submit to a second blood test precluded the officer from gaining access to the results of the earlier blood test conducted by the hospital. This Court stated:

> However, Section 1547(b) does *not* require the affirmative consent of the driver prior to the administration of a blood alcohol test as appellant would have us find. *See: Commonwealth v. Haynos* [363 Pa.Super. 1, 525 A.2d 394 (1987)], *supra; Commonwealth v. Funk, supra. See also: State v. Baker*, 502 A.2d 489 (Me.1985); *People v. Fite*, 267 Cal.App.2d 685, 73 Cal.Rptr. 666 (1968). *Cf. State v. Loscomb*, 291 Md. 424, 437–38, 435 A.2d 764, 771 (1981). Nor does it create an exclusionary rule where (1) the suspect did not affirmatively consent to the test, or (2) where such a test was administered before or *even after* the suspect refused to consent to the test. All the statute provides is a limited, statutory privilege to refuse to submit to a chemical test. "Where the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *Zimmerman v. O'Bannon*, 497 Pa. 551, 556, 442 A.2d 674, 677 (1982). Thus, we find that the refusal to submit to the blood alcohol test as requested by the officer has no bearing upon the admissibility of the results of the medical purposes blood alcohol test.

*Id.*, 380 Pa.Superior Ct. at 360, 551 A.2d at 1093 (emphasis added).

While the *Hipp* case is factually dissimilar to the case *sub judice* in that appellant's (Hipp's) statutory right to refuse

was not violated, we are constrained to abide by the above decisive language used by an *en banc* panel of this Court regarding the exclusionary effect on evidence ascertained through a violation of appellee's (Molino's) rights under § 1547(b)(1). Therefore, even though appellee's statutory right to refuse testing was violated, we must, in accordance with the *Hipp* case, rule that suppression of the blood test results is not warranted under the circumstances.

The trial court, in determining that the test results should be suppressed in the present case, stated that admitting the test results into evidence would be contrary to the legislative intent of § 1547(b)(1) and would sabotage the execution of that section. We disagree. Subsection 1547(b)(1) grants the driver arrested under section 3731 the right to refuse the blood test, but no where does § 1547(b) require that the test results be excluded if his refusal is ignored.[2] Contrary to the trial court's holding, we believe that excluding the blood test results in the present case would be to render subsection (a) of § 1547 meaningless. Section 1547(a) is an implied consent provision that encompasses every driver in the Commonwealth either suspected by the police of violating § 3731 or involved in an accident in which someone requires treatment at a hospital or is killed. While § 1547(b) allows one arrested under § 3731 to revoke that consent, it does not preclude the admission into evidence of the blood test results obtained following police disregard of a driver's wishes not to have his or her blood tested. It is true that the legislature has created an anomalous situation by enacting both the implied consent provision of § 1547(a) and the contradictory provision of § 1547(b), which, as stated, allows a person arrested under § 3731 to revoke his or her implied consent. We view these two provisions as irreconcilable. How can a person who drives a motor vehicle be deemed to have given consent to a chemical blood

2. *See, Commonwealth v. Loop,* 400 Pa.Super. 597, 584 A.2d 343 (1990), holding suppression remedy is inappropriate for violation of statute, where specific authority for such an order is not found in a rule of court or as a result of a constitutional violation. *Citing, Commonwealth v. Jones,* 245 Pa.Super. 487, 369 A.2d 733 (1977) (*en banc*).

test, where police have probable cause to believe the person was driving under the influence of alcohol, and yet, at the same time, have the right to refuse such blood testing? Enforcement of a defendant's statutory right to refuse, through the suppression of evidence obtained in contravention of this right, would be to render the implied consent provision meaningless.

We must stress that according to *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), there is no *constitutional* right to refuse a blood alcohol test where the police have probable cause to believe the person was driving a motor vehicle while under the influence of alcohol. Additionally, we fully acknowledge the state's right to provide broader protections from searches and seizures based on state constitutional grounds than those provided by the Federal Constitution. *Commonwealth v. Blystone*, 519 Pa. 450, 549 A.2d 81 (1988), *cert. granted in part*, 489 U.S. 1096, 109 S.Ct. 1567, 103 L.Ed.2d 934 (1989). Under the present version of § 1547, however, the legislature has failed to make clear whether subsection (b)(1) of the statute was intended to have the effect of broadening the constitutional rights of drivers suspected of driving while under the influence of alcohol. We will not construe § 1547(b)(1) as broadening a driver's Federal Constitutional rights, given the inherent contradiction existing between § 1547(a) and 1547(b)(1), and the legislature's failure to specify the remedy for police violation of a defendant's rights under § 1547(b)(1). We believe that it is for the legislature to correct the inconsistency that permeates § 1547, which has been a source of confusion for the judiciary and the legal community.

We do not intend our decision today to be a sanction of the police conduct in the present case. In no way should our holding be interpreted as an abrogation of a defendant's rights under § 1547(b), or as a license to police to disregard a defendant's refusal under this section. Our holding is limited to the determination that suppression is not the proper remedy where the police do violate a defendant's

statutory right to refuse blood testing in contravention of § 1547(b).[3]

For the foregoing reasons, we reverse the trial court's suppression order. Jurisdiction relinquished.

BECK, Judge, dissenting:

I respectfully dissent. I agree with the majority that the forced extraction of blood from appellee was a clear violation of the provisions of Pennsylvania's Implied Consent Law, 75 Pa.C.S.A. § 1547 (1984) (ICL). However, unlike the majority, I find that the police conduct was undertaken in bad faith and intentionally violated the ICL. Where the police undertake conduct in bad faith and deliberately disregard an individual's exercise of a statutory right, I conclude the law supports the suppression of the illegally obtained evidence. I would therefore affirm the suppression court's order excluding appellee's blood test results from subsequent criminal proceedings.

I stress at the outset that this court's review of a suppression court's order is limited. On appeal,

> we must consider only the evidence of the defendant's [appellee's] witnesses and so much of the Commonwealth evidence that, read in the context of the record as a whole, remains uncontradicted. *See Commonwealth v. Hamlin*, 503 Pa. 210, 469 A.2d 137 (1983). Furthermore, our scope of appellate review is limited primarily to questions of law. *See Commonwealth v. White*, 358 Pa.Super. 120, 516 A.2d 1211 (1986). We are bound by the suppression court's findings of fact if those findings are supported by the record. *Id.*

*Commonwealth v. Stine*, 372 Pa.Super. 312, 314, 539 A.2d 454, 455 (1988), *appeal denied*, 520 Pa. 588, 551 A.2d 215 (1988); *see also Interest of Jermaine*, 399 Pa.Super. 503,

3. The exclusionary rule is designed to remedy violations of the defendant's constitutional rights. No constitutional right of appellee is at issue in the present case. Therefore, we will not apply the exclusionary rule to the evidence acquired, even though we do not condone the conduct of the police in the present case.

504, 582 A.2d 1058, 1059 (1990). The majority's statement that "we may consider only the evidence of the prosecution's witnesses and so much of the evidence of the defense as, fairly read in the context of the record as a whole remains uncontradicted," majority opinion, at 69 (quoting *Commonwealth v. Fromal*, 392 Pa.Super. 100, 111, 572 A.2d 711, 717 (1990)), is only appropriate where the defendant is appealing the suppression order, not where, as in this case, the Commonwealth is appealing. *See Commonwealth v. Hamlin*, 503 Pa. 210, 215, 469 A.2d 137, 139 (1983). In my view, therefore, we may reverse the suppression court only where there has been an error in the application of law.

I begin my analysis by reviewing the relevant language of the Implied Consent Law. The legislature provides in pertinent part within section 1547 that

(a) [a]ny person who drives, ... a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood ... if a police officer has reasonable grounds to believe the person to have been driving ... a motor vehicle ... while under the influence of alcohol;

(b) [i]f any person placed under arrest for [driving under the influence of alcohol or a controlled substance, 75 Pa.C.S.A. § 1547] is requested to submit to chemical testing *and refuses* to do so, *the testing shall not be conducted* but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.

75 Pa.C.S.A. § 1547 (emphasis added). Therefore, section 1547(b) *expressly* provides that a suspected intoxicated driver who is under arrest for driving under the influence is granted the right to refuse to submit to a chemical test.[1] The law also provides that if the suspect refuses to submit

---

1. Appellee was arrested for driving under the influence of alcohol in violation of 75 Pa.C.S.A. § 3731. Therefore, appellee's refusal to submit to the blood alcohol test clearly falls within the provisions of section 1547(b).

to the requested test, the police *shall not* conduct the test. *See Commonwealth v. DeFaveri*, 352 Pa.Super. 96, 103, 507 A.2d 398, 401 (1986), *appeal denied* (Oct. 14, 1986).

As acknowledged by the majority, the forced extraction of blood from appellee Molino was a clear violation of section 1547(b). The majority notes, and I completely agree, that "[t]he testing should not have been conducted once [Molino] expressed his refusal to submit to the blood test." However, the majority finds that the intentional violation of this legislative mandate does not require the suppression of the test results at appellee's criminal trial. I disagree with the majority's reasoning and conclusion.

The majority concludes that a violation of the Implied Consent Law does not warrant exclusion of the blood test results based on *dicta* presented in a prior inapposite decision of this court: *Commonwealth v. Hipp*, 380 Pa.Super. 345, 551 A.2d 1086 (1988) *(en banc)*. Specifically the majority relies on the *Hipp* court's *dicta* that the ICL does not "create an exclusionary rule where (1) the suspect did not affirmatively consent to the test, or (2) where such a test was administered before or even after the suspect refused to consent to the test." 380 Pa.Super. at 360, 551 A.2d at 1093. *Hipp* is simply inapposite to the instant matter. Neither the facts nor issues addressed by the *Hipp* court are analogous to the facts or issue before this panel. The majority in fact acknowledges that *Hipp* "is factually dissimilar to the case *sub judice*." Majority Opinion, at 72–73. In *Hipp*, "[t]he officer complied with the provisions of the [Implied Consent Law] in that after appellant's refusal, *no test was performed*. Thus there was no violation of the terms of the [Implied Consent Law]." *Hipp*, 380 Pa.Super. at 359, 551 A.2d at 1093 (emphasis added). Moreover, the blood test in question in *Hipp* was taken for normal emergency room medical purposes, and *not forced by* the police. It is clear therefore that neither the facts nor issue before the *Hipp* court are apposite to our analysis and disposition of the instant matter.

Furthermore our supreme court has established that suppression is a proper remedy where the police obtain evidence by bad faith or by illegal conduct. *See Commonwealth v. Mason,* 507 Pa. 396, 406, 490 A.2d 421, 426 (1985); *Commonwealth v. Tarbert,* 517 Pa. 277, 535 A.2d 1035 (1987). The supreme court has noted that suppression may be a drastic remedy where the police have failed to adhere to the technicalities of a rule of court. *Mason,* 507 Pa. at 405, 490 A.2d at 425. More importantly, however, our supreme court has held that where illegal police conduct "implicates fundamental, constitutional concerns, is conducted in bad-faith or has substantially prejudiced the defendant [then] exclusion [of evidence] *may* be an appropriate remedy." *Mason,* 507 Pa. at 406, 490 A.2d at 426 (1985) (emphasis in the original).[2] The events leading to the extraction of blood from appellee plainly demonstrate police conduct taken in bad faith and deliberately disregarding the provisions of the ICL.

The trial court summarized the events following appellee's arrest as they were recorded on video tape. After being advised of the provisions of the ICL, the police requested appellee to submit to a blood test. Appellee at first did not respond. The police repeated the request for appellee to submit to the test, to which appellee clearly indicated he would not submit to the test. The police then requested that appellee sign a form stating that he knowingly refused to submit to the blood test. Appellee signed the form.

A short time afterward the police told appellee to put his arm out. When appellee asked why, the police told him they were going to administer a blood test. Appellee protested to any administration of a blood test. The police

2. It is worthy to note that in *Mason,* the court positively quoted the Ninth Circuit Court of Appeals, which held "suppression is required only where ... there is evidence of intentional and deliberate disregard of a provision of the Rule." *Mason,* 507 Pa. at 406, 490 A.2d at 426 (quoting *United States v. Johnson,* 660 F.2d 749, 753 (9th Cir. 1981), *cert. denied,* 455 U.S. 912, 102 S.Ct. 1263, 71 L.Ed.2d 452 (1982)).

response to appellee's refusal was that "they were going to take the blood from him whether he wanted it drawn or not." Trial Court Opinion, at 3. One officer informed appellee that "we can do this the easy way or we can do it the hard way." *Id.* At this point, one police officer forcibly held appellee's arm down and a nurse attempted to put the needle into appellee's arm. Appellee pulled away requiring that the nurse change the needle. For the second attempt, appellee's arm and shoulder were forcibly restrained, and the nurse was able to extract a blood sample from appellee. Trial Court Opinion, at 3.

This conduct plainly establishes the police acted in bad faith, intentionally violating the provisions of the Implied Consent Law. The video tape recording shows that the police were knowledgeable of and understood the provisions of the ICL. In fact, the police explained the various provisions of the ICL to appellee, including appellee's right to refuse to submit to a chemical test and the evidentiary effect of such a refusal. The police had appellee sign a form evidencing appellee's unambiguous and knowing refusal to consent to the blood test. Nevertheless, in response to appellee's explicit refusal to submit to a blood test, the police ignored appellee's exercise of his right to refuse, and forced the extraction of blood from appellee.[3]

3. Because I find the instant police conduct to be a bad faith violation of the ICL, requiring the suppression of the blood test results, I do not address any constitutional issues of due process. I note however, that although the United States Supreme Court has explained there is no violation of the federal constitution where a blood test is "performed in a reasonable manner," *Schmerber v. California*, 384 U.S. 757, 771, 86 S.Ct. 1826, 1836, 16 L.Ed.2d 908 (1966), the Court also emphasized that

we reach this judgment only on the facts of the present record. The integrity of an individual's person is a cherished value of our society. That we today hold that the Constitution does not forbid the States minor intrusions ... in no way indicates that it permits more substantial intrusions, or intrusions under other conditions. *Id.* at 772, 86 S.Ct. at 1836. I find the instant police conduct to be closer in relation to the forced stomach pumping of a suspect in *Rochin v. California*, 342 U.S. 165, 166, 72 S.Ct. 205, 206, 96 L.Ed. 183 (1952), than to the reasonably administered blood test in *Schmerber.* Police actions involving the forced restraint of a suspect while a nurse

The conduct of the police at bar was egregious and the appropriate remedy for such conduct undertaken in bad faith, intentionally violating the Implied Consent Law is the suppression of the evidence. *Mason,* 507 Pa. at 406, 490 A.2d at 426.[4]

As additional support for concluding that suppression is the proper remedy in this case, I find our supreme court's decision in *Commonwealth v. Tarbert,* 517 Pa. 277, 535 A.2d 1035 (1987), to be instructive. In *Tarbert,* the court found that police conduct which violated a statute could result in suppression. *Tarbert* did not involve bad faith on the part of the police; at issue was a misapplication of a statute on the part of the police. The rationale for suppression is stronger in the instant case than in *Tarbert.*

The *Tarbert* court confronted the issue "whether the police may set up systematic roadblocks for the purpose of stopping and observing drivers to determine whether they are operating a motor vehicle under the influence of alcohol." 517 Pa. at 278, 535 A.2d at 1036. The court analyzed the challenged police conduct of setting up systematic roadblocks and requiring suspected drivers to submit to breathalyzer tests in light of the statutory authority which limited the power of the police to stop motor vehicles. *Id.,* 517 Pa. at 294, 535 A.2d at 1043.

Pursuant to the language provided in 75 Pa.C.S.A. § 6308(b), the *Tarbert* court concluded that the legislature had expressly provided the criteria by which the police could

attempts on two occasions to put a needle into a suspect's arm "do more than offend some fastidious squeamishness or private sentimentalism about combatting crime too energetically. This is conduct that shocks the conscience." *Rochin,* 342 U.S. at 172, 72 S.Ct. at 209.

4.  *Compare Commonwealth v. Balliet,* 374 Pa.Super. 235, 542 A.2d 1000 (1988), *appeal denied,* 520 Pa. 613, 554 A.2d 505 (1989). In *Balliet,* this court addressed an alleged violation of the "knock and announce" rule, and held there was no bad faith evidenced by the police conduct because the police "did make an effort to comply with the spirit [of the rule] by knocking, identifying themselves and waiting a reasonable period of time." *Id.,* 374 Pa.Superior Ct. at 238, 542 A.2d at 1003. Unlike the police in *Balliet,* the police at bar did not "make an effort to comply with the spirit" of the statute; they deliberately disregarded the Implied Consent Law.

stop motor vehicles, and systematic roadblocks did not come within the established criteria. *Tarbert*, 517 Pa. at 295, 535 A.2d at 1044. Stating that "[i]t is certainly within the legislature's province to restrict the authority of police officers, even if such a restriction shows a more scrupulous regard for private rights than constitutional principles demand," the court held the roadblock stops in question were in violation of section 6308(b). *Tarbert*, 517 Pa. at 295, 535 A.2d at 1045.[5]

Of significance to the instant matter, the court held that because the roadblock stops were in violation of the state statute, the breathalyzer tests obtained during the stops were also unlawful. Therefore, the court held "the results of the [chemical] tests were properly suppressed in the ensuing criminal proceeding." *Id.* Moreover, I note that the court held suppression was a proper remedy in *Tarbert* even though there was no indication that the police acted in bad faith.

The majority also states that suppression is not an appropriate remedy because appellee's right to refuse to submit to the blood test is "only a statutory right." For support of this proposition, the majority refers to a recent decision of this court, *Commonwealth v. Loop*, 400 Pa.Super. 597, 584 A.2d 343 (1990). In *Loop*, the panel held the superior court could not require the suppression of evidence for an *alleged* violation of a state law enforcement records statute. 400 Pa.Super. at 600, 584 A.2d at 346. In reaching this conclusion, the *Loop* court stated that it found the asserted statutory violation to be, at best, "problematic." The court therefore, did not find a clear violation of the statute. Moreover, in *Loop* there was no allegation or indication of bad faith police conduct. The panel in fact limited its holding to the matter before it, stating that "under the facts of this case" suppression was improper. *Loop*, 400 Pa.Super. at 600, 584 A.2d at 346.

**5.** The *Tarbert* court noted that the version of § 6308(b) under review had been amended subsequent to the initiation of the case. *Tarbert*, 517 Pa. at 294, 535 A.2d at 1044.

Unlike *Loop,* in the case at bar there was an egregious and deliberate violation of the Implied Consent Law. Moreover, as previously discussed, the police undertook this seizure in bad faith. As such I find the instant case to be completely distinguishable from *Loop,* and conclude that suppression is the appropriate remedy. I find *Tarbert* and not *Loop* to be appropriate precedent. I conclude nothing in the law precludes suppression where police conduct is shown to be in direct violation of a legislative enactment. Suppression as a remedy is completely warranted especially here, where police conduct was taken in bad faith, intentionally disregarding legislative enactments.[6]

As a final point, I find the majority's analysis of the instant suppression motion to be contrary to the language and intentions of the Implied Consent Law. The language of the Implied Consent Law is a careful and clear presentation of the legislature's intent. The provisions of the statute demonstrate the General Assembly's specific balancing of the privacy interests of motor vehicle operators within Pennsylvania against the equally important state interest to protect its citizens from the tragic harm caused by drunk drivers.

This court has previously recognized the important countervailing interests carefully considered by the legislature when enacting the Implied Consent Law. As explained by Judge Hoffman,

6. I note that other jurisdictions have interpreted implied consent statutes substantially similar to our Implied Consent Law, and have held that suppression of chemical test results obtained in violation of the statute was proper. *See, e.g., Pena v. State,* 684 P.2d 864, 867 (Alas.1984) (holding that under an implied consent statute essentially equivalent to Pennsylvania's Implied Consent Law blood test results obtained against the wishes of the suspect should be suppressed from evidence); *People v. Wade,* 118 Misc.2d 330, 337, 460 N.Y.S.2d 870, 875 (1983) (noting that if a suspect refuses to permit the administration of a blood test, any test results would be excluded from evidence in a subsequent proceeding); *State v. Steele,* 93 N.M. 470, 477, 601 P.2d 440, 441 (Ct.App.1979) (holding that refusal of a suspect to submit to a chemical test precludes the introduction of any test results obtained over that refusal).

[o]ur Court has identified [the] competing interests which are involved when the state orders a chemical test to determine a person's sobriety. On the one hand, the Commonwealth has an interest in attempting to secure evanescent and probative evidence of intoxication; on the other hand, an individual has an abiding interest in the integrity and sanctity of his person.

*Commonwealth v. Funk*, 254 Pa.Super. 233, 245, 385 A.2d 995, 1001 (Hoffman, J., concurring).

With today's decision, the majority is rearranging the balance of interests carefully weighed by our legislature. As originally enacted and intended, the Implied Consent Law permitted a prosecutor to use as evidence *either* the blood test results obtained after a driver consented to the test, *or* use the fact that the driver refused to take the test. 75 Pa.C.S.A. § 1547(e); *Funk*, 254 Pa.Super. at 240, 385 A.2d at 999. Today's decision now permits the prosecution to use blood test results *whether or not* the suspect refuses to submit to the test. According to the majority, if an arrested suspect consents to a chemical test, the test result is admissible as evidence; *and* if, as permitted by statute, the suspected driver refuses to submit to a chemical test, results from a blood test that is forced upon the suspect in violation of the Implied Consent Law are also admissible as evidence. I find no support for holding that section 1547 provides that the state can use as evidence *either* the results from a consented to blood test, *or* the results from a refused blood test.

In summary, I find no error of law in the suppression court's order excluding appellee's blood test results, where appellee's blood was extracted by the police in bad faith, and in direct violation of the Implied Consent Law. I would affirm the suppression court's order. Any other result is unjust, condones police conduct taken in bad faith, and is contrary to legislative intent.