525 A.2d 394

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Dennis HAYNOS, Appellee.**

Superior Court of Pennsylvania.

Argued Nov. 18, 1986.

Filed May 4, 1987.

2

Stephen B. Harris, Assistant District Attorney, Warrington, for Com., appellant.

Martin J. King, New Hope, for appellee.

Before CAVANAUGH, OLSZEWSKI and TAMILIA, JJ.

OLSZEWSKI, Judge:

In this matter, the Commonwealth appeals an order granting the appellee's motion to suppress. The suppression court found that the police obtained the results of a blood test performed on appellee pursuant to an improperly issued subpoena and then used that evidence as a basis for drunk driving charges subsequently filed. Finding a cir-

cumvention of established search and seizure procedures, the court suppressed the blood test information. Upon review, we conclude that the subpoena was invalid and therefore should have been vacated. Because we find, however, that the Commonwealth learned the results of the test prior to issuance of the invalid subpoena, and that this information was obtained lawfully and without violating appellee's rights, we reverse the suppression court's decision.

Preliminarily we note that the Commonwealth may appeal from a trial court's ruling on a suppression motion when the Commonwealth certifies in good faith that the suppression order terminates or substantially handicaps its prosecution. *Commonwealth v. Dugger*, 506 Pa. 537, 546–547, 486 A.2d 382, 386 (1985). Because the Commonwealth has so certified, this appeal is properly before us.

On April 4, 1985, appellee was charged with driving under the influence of alcohol. Appellee subsequently filed omnibus pre-trial motions to suppress the results of a blood alcohol test. The motions were heard by the Honorable William H. Rufe, III, on October 10, 1985 on a stipulated set of facts. Following the hearing, Judge Rufe ordered that the blood test information be suppressed.[1] Thereafter, Judge Rufe filed an opinion in which he recited the agreed facts as follows:

On April 2, 1985, the defendant was involved in a one car accident in this County at 12:10 a.m. At 12:15 a.m. the arresting officer arrived on the scene, ascertained that defendant was the driver and detected an odor of alcohol on his breath. However, because of other duties

1. Judge Rufe also ordered that the criminal information be quashed. The Commonwealth then filed a timely appeal with this Court on October 31, 1985. On January 3, 1986, however, Judge Rufe requested remand of the record in order to amend the order to suppress as the order quashing the information was not requested by appellee and was therefore inappropriate. Thereafter, this Court ordered remand of the record for amendment of the October 10, 1985 order. After amendment, the Commonwealth took exception to the suppression order and advised the court that it would continue to pursue its appeal.

involved in investigating the accident and clearing the wreckage, the arresting officer did not administer any field sobriety tests, or note any other indicia of intoxication on or about the defendant.

Defendant was removed to the Doylestown Hospital where hospital personnel removed a vial of blood at 1:21 a.m. for their purposes in treating him. At that time defendant had not been arrested and was not informed of the implied consent law. At 2:00 a.m. the arresting officer arrived at the hospital and inquired of hospital personnel "under color of his authority as Police Officer investigating this accident, as to what the results had been of the earlier blood test of Mr. Haynos" (N.T. 4). At that time he was verbally advised by hospital personnel that the results were .148, later corrected to .147.

Thereafter, at 2:50 a.m., he requested the defendant to sign a written consent to withdraw blood for criminal purposes, which the defendant signed. Hospital personnel withdrew two vials of blood from the defendant at 2:55 a.m. which the arresting officer transported for analysis to the Bucks County Crime Laboratory. However, because of contaminents within the vials, the Crime Laboratory declined to analyze the blood.

Later that very same morning, the arresting officer went to the local District Justice of the Peace where he requested and obtained a subpoena for the blood results taken by Doylestown Hospital for the defendant's medical purposes. Upon being presented with the subpoena, the Hospital released the written results to the officer, whereupon he then swore out the affidavit of probable cause for the arrest of the defendant.

Trial court opinion at 1–3.

■ Our review of a suppression court's ruling is limited primarily to questions of law. *Commonwealth v. White*, 358 Pa.Super. 120, 123, 516 A.2d 1211, 1212 (1986). We are bound by the suppression court's findings of fact which are supported by the record. *Commonwealth v. Hamlin*, 503

Pa. 210, 215, 469 A.2d 137, 139 (1983). Factual findings wholly lacking in evidence, however, may be rejected. *Id.*

■ The trial court found, and in fact the Commonwealth concedes, that the subpoena for appellee's medical records was improper. We agree. As this Court noted in *Commonwealth v. Jolly,* 337 Pa.Super. 130, 132, 486 A.2d 515, 516 (1984), our Supreme Court has stated that "(A) prerequisite to the issuance of a subpoena (is) that there be some pre-existing matter or cause pending before the court." *Id.* quoting *Commonwealth v. Polak,* 438 Pa. 67, 263 A.2d 354 (1970). *See also Commonwealth v. DeJohn,* 486 Pa. 32, 403 A.2d 1283 (1979), *cert. denied,* 444 U.S. 1032, 100 S.Ct. 704, 62 L.Ed.2d 668 (1980) (subpoena concededly unlawful where, at time of issuance, there were no ongoing legal proceedings against appellant). In the present case, the subpoena was obtained when no arrest had been made, nor warrants or citations issued. Under these circumstances, the subpoena was invalid and should have been vacated.

■ Having found the subpoena to be improper, the trial court suppressed the blood test information obtained pursuant to that subpoena, the court indicating that "the subpoena was being used to obtain the evidence upon which to base the charges subsequently filed." Trial court opinion at 4. The record demonstrates, however, that the arresting officer, Officer Taylor, was advised of the test results by hospital personnel prior to issuance of the subpoena for the written results. The record also shows that the blood test evidence recited on Officer Taylor's affidavit of probable cause was based not upon the written results, but upon the verbal information proffered by the hospital. N.T. 10/10/85 at 7. The written results procured pursuant to the subpoena therefore played no role in Officer Taylor's determination of probable cause for appellee's arrest.[2] We

2. We observe that the trial court incorrectly stated that the arresting officer, Officer Taylor, procured the subpoena. The record indicates instead that Officer Schmidt obtained the subpoena and then went to the hospital and retrieved the written results of the blood test.

must decide whether suppression of the blood test information was an appropriate remedy under these circumstances.

Guiding our decision is a principle applied by the United States Supreme Court in *Maryland v. Macon,* 472 U.S. 463, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985). In that case, a county detective, who was not in uniform, entered an adult bookstore, browsed for several minutes, and purchased two magazines from the sales clerk with a marked $50 bill. The detective then left the store and showed the magazines to fellow officers who were waiting nearby. Upon concluding that the magazines were obscene, the detectives returned to the store, arrested the sales clerk, and retrieved the marked $50 bill from the cash register. The trial court denied the respondent's motion to suppress the magazines and the $50 bill. The Supreme Court held that the allegedly obscene magazines were properly admitted into evidence as the detectives did not obtain them by means of an unreasonable search or seizure and they were not the fruit of an arrest, lawful or otherwise. Significant to the instant case, the Court concluded that even assuming that respondent's warrantless arrest after the purchase of the magazines was an unreasonable seizure in violation of the Fourth Amendment, it would not require exclusion of the magazines at trial as it yielded nothing of evidentiary value that was not already in the lawful possession of the police. The Court observed, "(t)he exclusionary rule enjoins the Government from benefitting from evidence it has unlawfully obtained; it does not reach backward to taint information that was in official hands prior to any illegality." *Id.* at 471, 105 S.Ct. at 2783 (quoting *United States v. Crews,* 445 U.S. 463, 475, 100 S.Ct. 1244, 1252, 63 L.Ed.2d 537 (1980) (Brennan, J., joined by Stewart and Stevens, JJ.)).

Instantly, the arresting officer was advised of the blood test information prior to any illegality associated with issuance of the subpoena. Under the foregoing principle, therefore, the invalidity of the subpoena does not necessarily require exclusion of the blood test evidence.

■ This does not end our inquiry, however. Specifically, we must determine whether the police obtained the blood test information lawfully and without violation of appellee's rights in the first instance, i.e., when Officer Taylor requested and received verbal advice as to the results.[3] Appellee contends that he had a reasonable expectation of privacy in the results of the blood test at the time Officer Taylor made this inquiry. The oral request, appellee argues, was made without any legal process and absent facts establishing probable cause and therefore violated his right to be protected from unreasonable searches and seizures. For the reasons which follow, we reject appellee's argument and conclude that Officer Taylor did not act improperly and otherwise violate appellee's rights when he verbally inquired of the blood alcohol test taken by the hospital.

It is clear that the taking of a blood sample is a search and seizure subject to the protections of the Fourth Amendment. *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *Commonwealth v. Murray,* 441 Pa. 22, 271 A.2d 500 (1970). For purposes of our discussion, we will assume without deciding that the verbal request for information involved here was a search subject to Fourth Amendment protections as well.[4] After reviewing the relevant case law, we find that this search may be justified under the "implied consent" provision of the Motor Vehicle Code, 75 Pa.C.S. Sec. 1547(a), Act of June 17, 1976, P.L. 162, No. 81, Sec. 1; as amended December 15, 1982, P.L. 1268, No. 289, Sec. 5.[5] This section provides in pertinent part:

3. The suppression court concluded that this action was improper but did not indicate its reasons for so concluding. Trial court opinion at 3.

4. We do not determine, for example, whether appellee has a reasonable expectation of privacy in the results of the blood test taken for treatment purposes, nor the extent of any governmental interest in learning the results of such tests in accidents involving drunk drivers.

5. The Commonwealth did not argue the applicability of this provision to justify the officer's verbal inquiry as to the blood test results. Apparently, the propriety of this conduct was not at issue at the suppression hearing. Appellee's motion to suppress, for example,

### Sec. 1547 Chemical testing to determine amount of alcohol or controlled substance

(a) **General rule.**—Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:

   (1) while under the influence of alcohol or a controlled substance or both; or

   (2) which was involved in an accident in which the operator or passenger of any vehicle involved or a pedestrian required treatment at a medical facility or was killed.

We had occasion to discuss this provision and the cases interpreting it in *Commonwealth v. Cieri*, 346 Pa.Super. 77, 499 A.2d 317 (1985). The facts of *Cieri* are similar to those involved here. In *Cieri*, the police arrived at the scene of an accident and found appellant slumped over in the front seat of his car. The sergeant noticed an odor of alcohol on or about appellant's person but appellant was in a semi-conscious condition and did not respond to the sergeant's speaking to him initially. The sergeant then radioed the police dispatcher to call local hospitals to request that a blood sample be withdrawn from appellant when he arrived for treatment. The police continued to investigate the accident and interview witnesses after rescue personnel transported appellant to the hospital. The emergency room physician withdrew blood from appellant for the hospital's

---

focused on the impropriety of obtaining the results through the subpoena. Appellee contends on appeal, however, that the officer also acted improperly and otherwise violated appellee's rights when he verbally requested the results. In order to address this argument, we find we must consider the applicability of the implied consent provision and therefore have raised it in deciding this appeal.

purposes in performing necessary tests. Subsequently, the nurse on duty learned from the police dispatcher that the police had requested a blood sample. She then went to appellant, told him that the police had requested a blood sample, and asked that he sign a consent form enabling her to give the blood sample to the police. She read the consent form to appellant [6] and he signed it. Thereafter, the police sergeant arrived to pick up the blood sample. Appellant was in the operating room. The nurse asked the sergeant to sign the consent form, which he did and she gave him the blood sample. Neither the sergeant nor any other police officer had spoken with appellant regarding his blood being tested for alcohol level. Police technicians subsequently conducted a test of appellant's blood which revealed a blood alcohol level of 0.11.

The appellant in *Cieri* argued that the test should have been suppressed since the withdrawal of his blood was undoubtedly a search, and was conducted without a warrant at a time when appellant was not under arrest. Moreover, appellant argued, the only possible exception to the warrant requirement applicable was consent and although he did sign the consent form, his consent was invalid both because of the extent of his injuries and because, having spoken with no police officer, he had no notice of the criminal investigative purpose of the blood test. The Commonwealth argued in response that there was implied consent to the search and that the search was therefore justified under Section 1547 of the Motor Vehicle Code.

In an opinion authored by the Honorable Edmund B. Spaeth, this Court set forth the applicable case law as follows:

**6.** The consent form provided as follows:

I consent to the withdrawal of blood and/or collection of a urine sample by persons authorized to do so by Abington Memorial Hospital ( ) ... (f)or the purpose of determining the presence of alcohol or a controlled substance in my system. The police officers (sic) named below has explained my legal rights to me, the nature of the test or tests and possible risks associated with the test have been explained to me. I understand if I refuse my consent the test will not be performed.

We have held that under this provision—more precisely, under the substantially identical predecessor of this provision—police may constitutionally conduct a chemical test of a suspect's blood, without having arrested him and without transporting him from the scene in order to conduct the test, if they have probable cause to believe that the suspect has been driving under the influence of alcohol or a controlled substance. *Commonwealth v. Quarles*, 229 Pa.Super. 363, 324 A.2d 452 (1974) (plurality). While the statute speaks in terms of "implied consent," we concluded in *Quarles* that the constitutional basis for the test could not be to imply the suspect driver's consent to the test as a condition of operating a car, for that would constitute an "unconstitutional condition." *Id.*, 229 Pa.Superior Ct. at 378–81, 324 A.2d at 460–62. Rather, we construed the term "reasonable grounds" to mean "probable cause," and concluded that the constitutional basis for the test was the existence of probable cause to believe that the suspect had been driving under the influence of alcohol or a controlled substance. *Id.*, 229 Pa.Superior Ct. at 388, 324 A.2d at 466. In *Commonwealth v. Funk*, 254 Pa.Super. 233, 385 A.2d 995 (1978), we relied on *Quarles* to hold that where the police had such probable cause, they might constitutionally conduct a test even though the suspect was not conscious and could not therefore avail himself of his statutory right to refuse the test and have evidence of such refusal admitted at his trial. *Id.*, 254 Pa.Superior Ct. at 239–41, 385 A.2d at 998–99.

*Id.*, 346 Pa.Super. at 87, 499 A.2d at 322. We then concluded that the Commonwealth's claim of implied consent was justified, "for at the time the police received the sample of appellant's blood from Nurse Laird, they had probable cause to believe that appellant had been driving under the influence of alcohol or a controlled substance." *Id.*, 346 Pa.Super. at 88, 499 A.2d at 323. Moreover, we noted that the test at issue there constituted less of an intrusion than

that which might constitutionally have occurred at the accident scene on the basis of probable cause, "for the police neither invaded, nor seized and detained, appellant's person in order to administer the test." *Id.* We then held that the existence of probable cause, which would unquestionably suffice as a constitutional basis for a test administered at the scene, also suffices as a constitutional basis for a test administered at the hospital. *Id. See also Commonwealth v. Pelkey,* 349 Pa.Super. 373, 503 A.2d 414 (1985).

The principles set forth in *Cieri* are equally applicable here. Upon examination of the record, we find that Officer Taylor obtained probable cause to inquire of the blood test results after speaking to appellee at the scene of the accident. Probable cause to justify a warrantless search exists when the searching officer has knowledge of sufficient facts and circumstances, gained through trustworthy information, to warrant a man of reasonable caution in the belief that an offense has been or is being committed. *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *Commonwealth v. Bartlett,* 486 Pa. 396, 406 A.2d 340 (1979); *Commonwealth v. Palm,* 315 Pa.Super. 377, 462 A.2d 243 (1983).

According to the stipulated facts, the officer arrived at the scene and observed a motor vehicle which had struck a tree. Appellee was standing outside of the vehicle and indicated to the officer that he had been the driver. While talking to appellee, the officer detected an odor of alcohol on appellee's breath. Pinned within the vehicle was a passenger who had sustained serious injuries. Both appellee and his passenger required medical treatment and were thereafter transported by a rescue squad to Doylestown Hospital. We believe these facts establish sufficient probable cause for Officer Taylor's inquiry regarding the results of the blood test taken by the hospital. *See Commonwealth v. Guerry,* 469 Pa. 20, 364 A.2d 700 (1976); *Commonwealth v. Levesque,* 469 Pa. 118, 364 A.2d 932 (1976).

Having found that probable cause existed prior to this inquiry, we hold that this search was valid under the implied consent statute and the principles outlined in *Cieri.*[7]

Because the blood test information was obtained lawfully and without violating appellee's rights prior to issuance of the invalid subpoena, we reverse the suppression order and remand for proceedings consistent with this opinion.[8] Jurisdiction relinquished.

CAVANAUGH, J., concurs in the result.

7. In view of the foregoing, our decision in *Commonwealth v. Jolly, supra,* is distinguishable. There we held that the trial court should have suppressed blood test results obtained through a subpoena issued when no case was yet before a court. In *Jolly,* however, there was no discussion as to whether the arresting officer had sufficient information to establish probable cause prior to obtaining the results through an improperly issued subpoena. There, it was not until after the officer reviewed the results of the blood test that he filed the charge of driving under the influence. Here, however, we have found that Officer Taylor properly inquired as to the results of the test based on facts sufficient to establish probable cause. He then utilized that information, and not the information contained in the written results procured through the subpoena, in drafting his affidavit of probable cause.

8. The fact that the instant case involves the receipt of information as to a blood test result rather than the receipt of a blood sample as in *Cieri* does not compel a different result. In fact, the search involved here constitutes even less of an intrusion since the officer received nothing tangible, but merely hearsay evidence as to the result. Indeed, the verbal advice as to the result was rendered in accordance with the provisions of 75 Pa.C.S. Sec. 3755(a) which require that emergency room personnel take blood samples from persons who are involved in a motor vehicle accident if probable cause exists to believe such persons were driving under the influence of alcohol, and that the test results be released upon request of governmental officials or agencies.