655 A.2d 1024

COMMONWEALTH of Pennsylvania, Appellant

v.

Douglas D. SIMON, Jr.

Superior Court of Pennsylvania.

Argued Nov. 17, 1994.

Filed March 15, 1995.

Matthew D. Weintraub, Asst. Dist. Atty., Doylestown, for Com., appellant.

Andrew S. Hagler, Asst. Public Defender, Doylestown, for appellee.

Before WIEAND, CIRILLO and TAMILIA, JJ.

WIEAND, Judge:

This is an appeal by the Commonwealth of Pennsylvania from an order of the trial court which suppressed the results of a blood alcohol test performed on Douglas Simon, Jr. following an automobile accident. The Commonwealth has certified that the court's suppression of this evidence substantially handicaps its prosecution of Simon for driving while under the influence of alcohol.[1]

At or about 3:10 a.m. on the morning of November 17, 1993, Sergeant Richard Dechant of the Middletown Township Police Department arrived at the scene of an automobile accident in Langhorne, Bucks County. An unoccupied vehicle parked along the highway had been struck from behind by a moving vehicle. The driver's door of the second automobile was open, and Douglas Simon, Jr., the driver, was partially outside the vehicle. Dechant detected a strong odor of alcoholic beverages, and Simon was shaking uncontrollably. Simon told Dechant that "he was coming from the Grateful Dead concert" and that "he was a member of the Grateful Dead band."[2]

---

1. The appeal is proper. See: *Commonwealth v. Dugger*, 506 Pa. 537, 546–547, 486 A.2d 382, 386 (1985).

2. According to Sergeant Dechant, there had been such a concert in the area several months earlier, but there had not been one on the date of the accident.

Several minutes later, Simon was taken by ambulance to St. Mary Hospital. Sergeant Dechant followed. Upon arriving at the emergency room, Dechant heard Simon tell the medical personnel there that he had been coming from a Grateful Dead concert and that he was "the lead singer with the Grateful Dead." Dechant asked the attending physician whether he would draw blood from Simon and whether the blood sample would be tested for alcohol. Dechant informed the physician that, if he did not intend to perform blood alcohol tests otherwise, Dechant wanted such tests performed. The doctor replied that the hospital would draw blood and test for the presence of alcohol as part of standard hospital procedure.

Officer David Thornton, also of the Middletown Township Police Department, had arrived at the scene of the accident several minutes after Dechant arrived. His investigation revealed that the car which had been struck had become disabled and had been left at that location on the previous day. He also ascertained that the parked vehicle had been protruding approximately two feet into the highway before it had been struck. There were no eyewitnesses to the accident. After concluding his investigation, Thornton went to St. Mary Hospital, where Sergeant Dechant informed him that he had detected an odor of alcohol about Simon's person and that the hospital would be performing a blood alcohol test.

On November 29, 1993, the Middletown Township police obtained a subpoena for copies of Simon's medical records. These records revealed that, at approximately 4:00 a.m. on the morning of the accident, Simon had had a blood alcohol level of .268. On December 2, 1993, Officer Thornton filed a criminal complaint against Simon, charging him with driving while under the influence of alcohol in violation of 75 Pa.C.S. § 3731(a)(1), (4) and (5).[3] Simon filed a motion to suppress. The suppression court, after hearing, suppressed the results of the blood test. This appeal followed.

3. Simon was also given a citation for careless driving, a violation of 75 Pa.C.S. § 3714.

"When the Commonwealth appeals the adverse decision of a suppression court, we must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole [ ] remains uncontradicted." *Commonwealth v. Clark*, 412 Pa.Super. 92, 95, 602 A.2d 1323, 1325 (1992), *allocatur denied,* 533 Pa. 606, 618 A.2d 398 (1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1846, 123 L.Ed.2d 470 (1993). See also: *Commonwealth v. DeWitt,* 530 Pa. 299, 302, 608 A.2d 1030, 1031 (1992); *Commonwealth v. Twyman,* 425 Pa.Super. 198, 202, 624 A.2d 636, 637 (1993); *Commonwealth v. Taylor,* 424 Pa.Super. 181, 183, 622 A.2d 329, 330 (1993); *Commonwealth v. Morgan,* 414 Pa.Super. 1, 3, 606 A.2d 467, 468 (1992). Our scope of review is limited primarily to questions of law. See: *Commonwealth v. McElroy,* 428 Pa.Super. 69, 71, 630 A.2d 35, 36 (1993); *Commonwealth v. Burnside,* 425 Pa.Super. 425, 429, 625 A.2d 678, 680 (1993); *Commonwealth v. Bennett,* 412 Pa.Super. 603, 606, 604 A.2d 276, 277 (1992). " 'We are bound by the suppression court's findings of fact if those findings are supported by the record. Factual findings wholly lacking in evidence, however, may be rejected.' " *Commonwealth v. Marconi,* 408 Pa.Super. 601, 607, 597 A.2d 616, 619 (1991), *allocatur denied,* 531 Pa. 638, 611 A.2d 711 (1992), quoting *Commonwealth v. Person,* 385 Pa.Super. 197, 560 A.2d 761 (1989), *allocatur denied,* 525 Pa. 644, 581 A.2d 570 (1990). See also: *Commonwealth v. Hamlin,* 503 Pa. 210, 215, 469 A.2d 137, 139 (1983); *Commonwealth v. Stein,* 369 Pa.Super. 409, 413, 535 A.2d 616, 618 (1987), *allocatur denied,* 520 Pa. 574, 549 A.2d 134 (1988).

It is well settled that "a prerequisite to the issuance of a subpoena [is] that there be some pre-existing matter or cause pending before the court." *Commonwealth v. Polak,* 438 Pa. 67, 69, 263 A.2d 354, 356 (1970). See also: *Commonwealth v. DeJohn,* 486 Pa. 32, 403 A.2d 1283 (1979), *cert. denied,* 444 U.S. 1032, 100 S.Ct. 704, 62 L.Ed.2d 668 (1980); *Commonwealth v. Haynos,* 363 Pa.Super. 1, 525 A.2d 394 (1987), *allocatur denied,* 517 Pa. 604, 536 A.2d 1329 (1987); *Commonwealth v. Jolly,* 337 Pa.Super. 130, 486 A.2d 515

(1984). At the time the subpoena for Simon's medical records was issued, no charges had been filed, no arrest had been made, and no warrant had been issued. The subpoena, the Commonwealth concedes, was invalid. However, where the police are otherwise lawfully entitled to blood test results, suppression is not mandated by the fact that the test results were obtained pursuant to an invalid subpoena. See: *Commonwealth v. Haynos, supra* at 5–7, 525 A.2d at 396–397. We must determine, therefore, whether the police were otherwise entitled to the results of Simon's blood alcohol test.

The "implied consent" provision of the Motor Vehicle Code is, in part, as follows:

§ 1547. **Chemical testing to determine amount of alcohol or controlled substance**

(a) **General rule.**—Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:

(1) while under the influence of alcohol or a controlled substance or both;

75 Pa.C.S. § 1547(a)(1). The "reasonable grounds" requirement of the implied consent statute has been interpreted to require probable cause. See: *Commonwealth v. Urbanski,* 426 Pa.Super. 505, 511 n. 2, 627 A.2d 789, 792 n. 2 (1993), *allocatur denied,* 535 Pa. 657, 634 A.2d 221 (1993); *Commonwealth v. Cieri,* 346 Pa.Super. 77, 87, 499 A.2d 317, 322 (1985).

Section 3755 of the Motor Vehicle Code also provides for blood testing to be performed as follows:

§ 3755. **Reports by emergency room personnel**

(a) **General rule.**—If, as a result of a motor vehicle accident, the person who drove, operated or was in actual physical control of the movement of any involved motor

vehicle requires medical treatment in an emergency room of a hospital and if probable cause exists to believe a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) was involved, the emergency room physician or his designee shall promptly take blood samples from those persons and transmit them within 24 hours for testing to the Department of Health or a clinical laboratory licensed and approved by the Department of Health and specifically designated for this purpose. This section shall be applicable to all injured occupants who were capable of motor vehicle operation if the operator or person in actual physical control of the movement of the motor vehicle cannot be determined. Test results shall be released upon request of the person tested, his attorney, his physician or governmental officials or agencies.

75 Pa.C.S. § 3755(a)

These sections of the Motor Vehicle Code were recently before the Pennsylvania Supreme Court in *Commonwealth v. Riedel,* 539 Pa. 172, 651 A.2d 135 (1994). There, in a Fourth Amendment challenge, the Court observed that the defendant had been subjected to two different searches. The first search had occurred when the hospital took blood samples from the defendant, and the second had occurred when the police obtained the results of the blood test from the hospital's laboratory. The blood had been withdrawn to facilitate medical treatment and without police request and, therefore, had not implicated the defendant's Fourth Amendment rights. The second search, however, had involved police action and did implicate the defendant's Fourth Amendment rights. The Court held that the Pennsylvania implied consent law nevertheless made it possible for a police officer having probable cause to request a blood test under 75 Pa.C.S. § 3755(a) to obtain the results of a blood test without a warrant. The results of the blood test could be obtained without a warrant even though the officer had failed to verbalize a prior request for the blood test. Three Justices, in a Concurring Opinion, suggested that a different result might have obtained if the

second search had been challenged under Article I, § 8 of the Pennsylvania Constitution. To obtain the results of the blood test upon request, they said, police were required to make a request, when probable cause existed, for the withdrawal of blood samples. The concurring Justices reasoned:

A police officer may request that emergency room personnel take blood samples for testing from a person who requires medical treatment when probable cause exists to believe that the person was operating a vehicle under the influence of alcohol. 75 Pa.C.S.A. § 3755(a). When such a request is made, the hospital personnel have an affirmative duty to obtain the blood samples and to transmit them for blood alcohol content testing. The test results are released upon request of the person tested, his attorney, his physician, or governmental officials or agencies. When a police officer fails to follow this procedure and fails to request that blood samples be drawn, the statute does not authorize the officer to obtain medical records of a person suspected of operating a motor vehicle under the influence of alcohol.

*Id.* at 539 Pa. 188, 651 A.2d at 143 (Concurring Opinion by Zappala, J.).

■ In the instant case, however, Sergeant Dechant did make a request for hospital personnel to withdraw blood from Simon and was assured that it would be done. Under Pennsylvania's implied consent statute, therefore, he was entitled, upon request, to a release of the test results. The fact that he attempted to obtain the results by the issuance of a spurious subpoena did not require suppression of the results of the blood test so long as the original request to withdraw blood from Simon had been supported by probable cause.

■ "Probable cause exists where the officer has knowledge of sufficient facts and circumstances to warrant a prudent person to believe that the driver has been driving under the influence of alcohol or a controlled substance." *Commonwealth v. Welshans*, 397 Pa.Super. 439, 443, 580 A.2d 379, 381 (1990), *affirmed*, 529 Pa. 571, 605 A.2d 1222 (1992). See also: *Commonwealth v. Franz*, 430 Pa.Super. 394, 401, 634 A.2d

662, 665 (1993); *Commonwealth v. Dungan,* 372 Pa.Super. 323, 333, 539 A.2d 817, 821–822 (1988), *allocatur denied,* 522 Pa. 573, 559 A.2d 34 (1989); *Commonwealth v. Haynos, supra,* 105 Pa.Cmwlth. at 11, 525 A.2d at 399. The Superior Court "has repeatedly upheld probable cause to conduct a blood alcohol test under subsection (a)(1) of the implied consent statute where the defendant has looked and smelled like he has consumed alcohol and a serious one car or head-on accident has occurred." *Commonwealth v. Smith,* 382 Pa.Super. 288, 297, 555 A.2d 185, 189 (1989), *allocatur denied,* 524 Pa. 607, 569 A.2d 1366 (1989). Probable cause exists, moreover, where "a serious motor vehicle accident has occurred involving a driver who was found in a semiconscious state with the odor of alcohol on his breath. Accordingly, the absence of other physical characteristics of intoxication, such as an unsteady gait, a disheveled appearance and slurred speech, is inconsequential to our decision." *Commonwealth v. Pelkey,* 349 Pa.Super. 373, 379, 503 A.2d 414, 416 (1985) (citations omitted).

Here, the police came upon the scene of a collision in which Douglas Simon's vehicle had struck a parked vehicle in clear weather. When a police officer approached Simon, he was shaking, made nonsensical statements and had a very strong odor of alcoholic beverages about his person. These circumstances were sufficient to give an experienced police officer probable cause to believe that Simon had been drinking and that alcohol had been involved in the accident. See: *Commonwealth v. Welshans, supra,* 397 Pa.Super. at 444, 580 A.2d at 381; *Commonwealth v. Haynos, supra,* 105 Pa.Cmwlth. at 11, 525 A.2d at 399.

Under the facts of this case, therefore, we conclude that the suppression court erred when it suppressed the use of the blood test results by the Commonwealth. The evidence was available to the police on request under both the federal and state constitutions.

Reversed and remanded for further proceedings. Jurisdiction is not retained.