J-S50044-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MICHAEL ROBBIE CALVIN BEST, II | : | |
| | : | No. 3557 EDA 2016 |
| Appellant | | |

Appeal from the Judgment of Sentence January 5, 2016
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s):  CP-39-CR-0001581-2015

BEFORE:   PANELLA,  MOULTON,  and RANSOM, JJ.

MEMORANDUM BY RANSOM, J.:                    **FILED OCTOBER 30, 2017**

Appellant, Michael Best, II, appeals from the judgment of sentence of ninety days to two years of incarceration followed by one year of probation, imposed January 5, 2016, following a bench trial resulting in his conviction for driving under the influence of alcohol or controlled substance ("DUI") (generally), DUI - highest tier - second offense, and careless driving.[1]  We affirm.

The relevant facts and procedural history are as follows.  This appeal arises out of the denial of Appellant's motion to suppress blood test results and statements admitted into evidence.  At the suppression hearing, the Commonwealth presented the testimony of Trooper Thomas Rummerfield, who testified as follows. It was a clear night with dry conditions around 11

---

[1] **See** 75 Pa.C.S. § 3802(a)(1), § 3802(a)(c), and § 3714(a).

p.m. on November 19, 2014, when the Trooper was dispatched to investigate a one car accident in Washington Township, Lehigh County. *See* Notes of Testimony (N.T.), 5/9/2015, at 8. The Trooper "observed a gray Volkswagen Jetta in the westbound lane of travel facing east." *Id.* at 9. The physical evidence, tire marks, and debris, indicated that the vehicle "was traveling west and [,] as the road curved to the left[,] [it] went straight and impacted a tree." *Id.* at 9-10. The Trooper concluded that the driver failed to maneuver the turn, the car spun around as it impacted a tree, and ended up facing the opposite direction. *Id.* at 10.

The vehicle had "[h]eavy front end damage as well as heavy damage to the windshield" – a hole in the windshield on the driver's side filled with "blood and gore." *Id.* The driver had already been transported to Cedar Crest Hospital for treatment of extensive injuries by the time the Trooper had arrived. *Id.* at 13. The Chief of the Friedens Fire Department informed the Trooper that the driver was a younger man. *Id.* at 12. The Trooper collected the driver's insurance and registration information for the crash investigation. *Id.* at 11-12. The vehicle's registered owner was an older man. *Id.* Thus, the Trooper conducted a NCIC search of the owner's last name and found whom he presumed was the owner's son, Appellant, whose address matched the vehicle registration and whose profile fit the age description of the driver provided by first responders. *See id.* at 12.

The Trooper proceeded to Cedar Crest Hospital "after midnight, 12:05 [a.m.] or so." *Id.* at 15. The Trooper could not speak with Appellant

immediately because he was being treated for his injuries. *Id.* at 13. The Trooper spoke to the emergency medical personnel who transported Appellant to the hospital. *Id.* at 13. They described Appellant's "extensive injuries" and a "strong odor of alcohol" emanating from Appellant's person as they transported him. *Id.* at 13.

The Trooper requested Appellant's blood from hospital personnel. *Id.* at 13-14. Hospital personnel informed the Trooper that Appellant's blood had already been drawn at 11:46 p.m., prior to the Trooper's arrival at the hospital. *Id.* at 15. In fact, the hospital "had the blood waiting for [him]." *Id.* at 14, 15. The Trooper proceeded to fill out the hospital's standard chain of custody form, which stated:

> The undersigned law enforcement officer requests that a person authorized by the hospital take blood or urine sample from the above individual and certifies that a determination of probable cause that the individual was operating a motor vehicle while under the influence of alcohol or a controlled substance has been established.

*Id.* at 16.

After the Trooper requested Appellant's blood, signed the chain of custody form, and received Appellant's blood, he was able to speak with Appellant in a hospital room. *Id.* at 17. Appellant was laying on a hospital bed in a curtained off area of the hospital where he was physically attached or connected to medical devices monitoring his vital signs. *Id.* Appellant had sustained major injuries to his face, which was wrapped in bandages; the Trooper could only see his left eye, and his right eye was covered in blood.

- 3 -

*Id.* The Trooper did not inform Appellant that he was under arrest or investigation for a crime.

The Trooper testified that Appellant's visible eye was "glassy, bloodshot." *Id.* The Trooper also "detected the odor of alcoholic beverage emanating from his breath" and a "slight slur" in Appellant's speech. *Id.* The purpose of the conversation was for the Trooper "to determine why the crash occurred," and his first question was "[t]ell me what happened." *Id.* at 18. Appellant stated that he did not know how fast he was driving. *Id.* at 19. The Trooper also questioned him about the suspension of his Pennsylvania driver's license, and Appellant indicated to him that he had a valid license from South Carolina. *See* Trial Ct. Op., 10/15/2015, at 5. After finishing "standardized crash questions," the Trooper asked Appellant additional questions, including: "how much he had had to drink and where he was coming from, where he drank, and how much he drank." N.T. at 19. Appellant responded that he "drank two beers and two rum and cokes at the Old Post Inn." *Id.* at 19-20. After this questioning concluded, the Trooper transported the vial of blood he had received already to Lehigh Valley Health Network Laboratories for analysis. *Id.* at 22, 32. The test results revealed a blood-alcohol content (BAC) of .22%. *See id.* at 23. Thereafter, Appellant was arrested and charged with DUI-related offenses and traffic violations.

On July 15, 2015, Appellant filed a pre-trial motion to suppress the results of the blood alcohol test and statements he made to the Trooper. In October 2015, the trial court issued an opinion and order denying Appellant's

motion to suppress. With regard to the blood test, the trial court concluded that because Trooper Rummerfield made the necessary request to the hospital at a time when he believed he had probable cause to suspect a violation of Section 3802 (relating to driving under the influence or a controlled substance), that the warrantless seizure of Appellant's blood from the hospital was authorized pursuant to the implied consent statute and 75 Pa.C.S. § 3755. Trial Ct. Op., 10/15/2015, at 7-8.

With regard to the statements, the trial court reasoned that the Trooper's interview of Appellant in the hospital did not constitute a custodial interrogation because Appellant was "not taken into custody or otherwise deprived of his freedom of action in any significant way." Trial Ct. Op., 10/15/2015, at 9 (citations omitted). The trial court concluded that the interaction between Appellant and the Trooper was a mere investigative detention, and thus, the Trooper was not required to read Appellant his *Miranda* warnings.[2] *See id.* at 11.

Following a bench trial, where Appellant's blood test results and statements were admitted, Appellant was found guilty of the aforementioned DUI-related charges. On January 5, 2016, Appellant was sentenced to ninety days to two years of incarceration followed by one year of probation. Appellant untimely filed a motion for reconsideration of his sentence, which the trial court denied on January 20, 2016.

_____

[2] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

On February 11, 2016, Appellant filed a notice of appeal and Pa.R.A.P. 1925(b) statement. This Court quashed the appeal as untimely from the judgment of sentence imposed on January 5, 2016. **See** Order, 581 EDA 2016, 8/17/2016.[3]

On July 8, 2016, Appellant filed a petition pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546, seeking reinstatement of his appellate rights. After Appellant's direct appeal rights were reinstated on November 1, 2016, he timely filed a notice of appeal and court-ordered Pa.R.A.P. 1925(b) statement.

On appeal, Appellant raises the following issues:

1. Did the trial court err in denying defendant's pre-trial motions for the following reasons:

   A. The blood drawn at the hospital was utilized in violation of [Appellant]'s rights under the Pennsylvania and United States Constitutions;

   B. Law enforcement officials violated [Appellant]'s constitutional rights by failing to advise him of his Miranda warnings despite the fact that he was in custody at the hospital.

---

[3] This Court quashed the appeal *sua sponte* because Appellant's post-sentence motion filed on January 19, 2016 was untimely and Appellant failed to file a notice of appeal within thirty days from the judgment of sentence. **See** Pa.R.Crim.P. 720(A)(1) ("[A] written post-sentence motion shall be filed no later than 10 days after imposition of sentence"); Pa.R.Crim.P. 720(A)(3) ("If the defendant does not file a timely post-sentence motion, the defendant's notice of appeal shall be filed within 30 days of imposition of sentence"); Pa.R.A.P. 903(c)(3) ("In a criminal case in which no post-sentence motion has been filed, the notice of appeal shall be filed within 30 days of the imposition of the judgment of sentence in open court.").

Appellant's Br. at 4.

Once a motion to suppress has been filed, the Commonwealth has the burden to prove at the suppression hearing "by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." *Commonwealth v. Evans*, 153 A.3d 323, 327 (Pa. Super. 2016) (quoting *Commonwealth v. Wallace*, 42 A.3d 1040, 1047-1048 (Pa. 2012) (*en banc*)); *see also* Pa.R.Crim.P. 581(H).

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous.

*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010) (citation omitted).

"The Fourth Amendment to the [United States] Constitution and Article I, Section 8 of [the Pennsylvania] Constitution protect citizens from unreasonable searches and seizures." *Commonwealth v. McAdoo*, 46 A.3d 781, 784 (Pa. Super. 2012).

> The administration of a blood test is a search within the meaning of Article I, section 8 if performed by an agent of, or at the direction of the government. Generally, a search or seizure is not reasonable unless it is conducted pursuant to a search warrant issued by a magistrate upon a showing of probable cause. Probable cause exists when an officer has knowledge of sufficient facts and circumstances, gained through trustworthy information, to warrant a prudent man to believe that the person seized has

committed a crime.

***Commonwealth v. Kohl***, 615 A.3d 308, 315 (Pa. 1992) (internal citation omitted).

In the first argument section of his brief, Appellant presents a short series of disconnected assertions that do not effectively develop an argument in support of his contention that testing on blood drawn while he received medical treatment violated his constitutional rights. He fails to meaningfully develop any analysis in support of this constitutional claim, or apply the case-law he cites to the facts of his case. Where an appellant fails to develop his argument in a meaningful fashion capable of review, the claim is waived. ***See Commonwealth v. Woodard***, 129 A.3d 480, 502 (Pa. 2015) ("It is not the obligation of an appellate court to formulate appellant's arguments for him") (quotation omitted); ***Commonwealth v. Walter***, 966 A.2d 560, 566 (Pa. 2009) (appellant's constitutional claims were "waived for failure to develop them in any meaningful fashion capable of review"); ***see also*** Pa.R.A.P. 2119(a) (providing that appellate briefs must contain "such discussion and citation of authorities as are deemed pertinent"). Nevertheless, we note the following.

According to Appellant, his blood was drawn by "an emergency room technician, based on the mandatory reporting under [S]ection 3755." Appellant's Br. at 9; ***see*** 75 Pa.C.S. § 3755. In this regard, Appellant appears to concede that an officer may request, without a warrant, that blood be drawn

by hospital medical staff, tested for the presence of alcohol, and that the test results may be provided to the Commonwealth, based upon an assertion that the officer has probable cause to suspect a driver of DUI. **See** Appellant's Br. at 10 (citing **Commonwealth v. Shaffer**, 714 A.2d 1035 (Pa. Super. 1998) (in general terms, recognizing the constitutionality of 75 Pa.C.S. § 3755 and what it permits)). Despite this, Appellant also suggests that "[t]here was nothing to prevent the police from obtaining a warrant in order to get a blood sample to test it for alcohol content." **Id.** at 10 (citing in support **Commonwealth v. Myers**, 118 A.3d 1122, 1125 (Pa. Super. 2015), *aff'd,* 164 A.3d 1162 (Pa. 2017)). Further, he maintains that, at the time a blood sample was requested for testing, the Trooper lacked sufficient probable cause. **See id.** at 9-10. According to Appellant, the Trooper's first-hand knowledge was limited to his observations at the accident scene. **Id.** For example, according to Appellant, the Trooper did not personally observe or interact with Appellant prior to making the blood request, *i.e.*, he did not observe characteristics of a drunk-driver, determine if there was an odor of alcohol, if Appellant had glassy eyes, or control of his balance. **Id.**

[W]e conclude that Appellant has not effectively challenged the constitutionality of 75 Pa.C.S. 3755. Rather, Appellant merely asserts that the Commonwealth did not meet its requirements. **See, generally,**

J-S50044-17

Appellant's Br. at 9-10.  We limit our discussion accordingly.[4]

Here, the trial court found that the Trooper had developed sufficient

---

[4] Recent precedent from the United States Supreme Court has precipitated a seismic shift in our implied consent jurisprudence.  In *Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016), the United States Supreme Court recognized that "[t]here must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads." *Id.* at 2185.  Of particular significance, *Birchfield* held that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." *Id.* at 2186.  Accordingly, this Court has recognized that Pennsylvania's implied consent scheme, as codified at 75 Pa.C.S. § 1547, was unconstitutional insofar as it threatened to impose enhanced criminal penalties for the refusal to submit to a blood test.  *Commonwealth v. Ennels*, 167 A.3d 716, 724 (Pa. Super. 2017), *reargument denied* (Sept. 19, 2017) (noting that "implied consent to a blood test cannot lawfully be based on the threat of such enhanced penalties"); *Commonwealth v. Evans*, 153 A.3d 323, 330-31 (Pa. Super. 2016).

Recently, the Pennsylvania Supreme Court has further examined the statutory requirements of Section 1547, concluding that a motorist has "an absolute right to refuse chemical testing." *See Commonwealth v. Myers*, 164 A.3d 1162, 1172 (Pa. 2017).  Notably, however, the Court was unable to reach a majority decision on a related, constitutional question, *i.e.*, whether implied consent may serve as an independent warrant exception. *Id.* at 1178-79 (recognizing that U.S. Supreme Court has not resolved this question), 1182 (indicating that the constitutional analysis of Justice Wecht did not receive support from a majority of the Court), 1189 (Mundy, J., dissenting) (suggesting that the implied consent statute permits chemical testing without a warrant based on probable cause for DUI).

To be clear, Appellant does not challenge Section 1547.  Thus, neither *Birchfield* nor the constitutionality of Pennsylvania's implied consent scheme are directly before this Court.  Further, Appellant does not challenge the interplay between Section 1547 and Section 3755. *See Commonwealth v. Barton*, 690 A.2d 293, 299-300 (Pa. Super. 1997).  Thus, the extent to which Pennsylvania's implied consent scheme may empower a police officer to secure blood samples of a suspected drunk driver from hospital personnel based upon an assertion of probable cause is also not before this Court, and we decline to address it *sua sponte*.

probable cause to request Appellant's blood sample pursuant to 75 Pa.C.S. § 3755. *See* Trial Ct. Op., 3/4/2016, at 7-8 (relying on ***Commonwealth v. Barton***, 690 A.2d 293, 300 (Pa. Super. 1997)). Section 3755 provides, in relevant part:

> General rule. If, as a result of a motor vehicle accident, the person who drove, operated or was in actual physical control of the movement of any involved motor vehicle requires medical treatment in an emergency room of a hospital and if probable cause exists to believe a violation of section 3802 (relating to driving under influence of alcohol or controlled substance) was involved, the emergency room physician or his designee shall promptly take blood samples from those persons and transmit them within 24 hours for testing to the Department of Health or a clinical laboratory licensed and approved by the Department of Health and specifically designated for this purpose. This section shall be applicable to all injured occupants who were capable of motor vehicle operation if the operator or person in actual physical control of the movement of the motor vehicle cannot be determined. Test results shall be released upon request of the person tested, his attorney, his physician or governmental officials or agencies.

75 Pa.C.S. § 3755(a) (enacted Feb. 1, 2004).

Section 3755 authorizes an officer to request a chemical test if two requirements are met: (1) a motorist "requires medical treatment in an emergency room of a hospital," and (2) "probable cause exists to believe a violation of section 3802 (relating to driving under influence of alcohol or controlled substance) was involved[.]" 75 Pa.C.S. § 3755.

> Our courts have found that, together, sections 1547 and 3755 comprise a statutory scheme which, under particular circumstances, not only imply the consent of a driver to undergo chemical or blood tests, but also require hospital personnel to withdraw blood from a person, and release the test results, at the request of a police officer who has probable cause to believe the

- 11 -

person was operating a vehicle while under the influence.

**Barton**, 690 A.2d at 299-300 (citing **Commonwealth v. Riedel**, 539 Pa. 172, 180, 651 A.2d 135, 139–40 (Pa. 1994)).

Contrary to Appellant's assertion, the timing of the blood draw by a hospital is irrelevant for the purpose of determining compliance with Section 3755. **Commonwealth v. Seibert**, 799 A.2d 54, 64 (Pa. Super. 2002). "The litmus test under section 3755 is *probable cause* to request a blood test, not the request itself." **Barton**, 690 A.2d at 297 (quoting **Riedel**, 651 A.2d at 140). If the police officer has probable cause to believe the Appellant was driving under the influence of alcohol, then "the [Appellant's] consent to undergo chemical or blood tests was implied, and hospital personnel were required to withdraw blood from [Appellant] and release the test results." **Commonwealth v. Keller**, 823 A.2d 1004, 1010 (Pa. Super. 2003). "[T]he officer is entitled to obtain the results of such tests, regardless of whether the test was performed for medical purposes or legal purposes." **Barton**, 690 A.2d at 299-300.

The existence of probable cause suffices as a constitutional basis for the release of a blood test administered by the hospital pursuant to Section 3755. **Commonwealth v. Haynos**, 525 A.2d 394, 398 (Pa. Super. 1987), *alloc. denied*, 525 A.2d 394 (Pa. 1987). "[I]n instances in which probable cause has been established, the absence of a warrant requirement under the implied consent provisions does not render the blood, breath, and urine tests

unreasonable under Article I, § 8 of the Pennsylvania Constitution due to time's dissipating effect on the evidence." *Kohl*, 615 A.2d at 315. The Supreme Court has reasoned that a request for results of a previously administered test is far less intrusive than the administration of a non-consensual blood test. *See Riedel*, 651 A.2d at 140.

Appellant suggests that the evidence presented at the suppression hearing was insufficient to establish probable cause to believe a violation occurred at the time of the Trooper's request. The evidence included: (1) the Trooper's observations that the driving conditions were clear; (2) a car impacted a tree; (3) the positioning of the wreckage, which led the Trooper to conclude that the driver failed to maneuver a curve; (4) evidence that Appellant was the driver; (5) statements of emergency medical personnel who described a "strong odor of alcohol" emanating from Appellant's person as they transported him to the hospital; and (6) evidence that Appellant sustained extensive injuries. *See* Trial Ct. Op. (TCO), 10/15/2015, at 4.

In *Haynos*, this Court determined that probable cause was established where an officer observed a motor vehicle that had struck a tree and detected the odor of alcohol on the driver's breath. *Haynos*, 525 A.2d at 399. Here, Trooper Rummerfield also observed the damage caused by a single car accident and concluded that Appellant had struck a tree. Further, he gained trustworthy information regarding the odor on Appellant's breath from medical personnel. Together, these facts were sufficient to support probable cause to

suspect that the cause of the accident was Appellant's violation of section 3802.

We conclude that the facts known to Trooper Rummerfield at the time of his request were sufficient to establish probable cause to request testing under Section 3755. *See Haynos, supra*; *see also, e.g., Commonwealth v. Moore*, 635 A.2d 625, 627 (Pa. Super. 1993) (concluding an officer had probable cause to support a subpoena where police were aware of evidence surrounding a previous accident and where alcohol had been detected on driver's breath). Because the blood test was requested based on probable cause pursuant to Section 3755, the trial court did not err in admitting the results of the test into evidence. *See Barton, supra*.

Appellant's second issue challenges the denial of his motion to suppress statements made while in the hospital. Our standard of review is as follows:

> The standard of review in a motion to suppress is clear: When reviewing the suppression court's denial of a motion to suppress, we must first ascertain whether the record supports the suppression court's factual findings. We are bound by the suppression court's findings if they are supported by the record, and may only reverse the suppression court if the legal conclusions drawn from the findings are in error.

*Commonwealth v. Perry*, 710 A.2d 1183, 1184 (Pa. Super. 1998) (internal citation omitted).

Appellant contends that his statements must be suppressed because he was subject to a custodial interrogation in the hospital without being read *Miranda* warnings. *See* Appellant's Br. at 11-12 (citing in support

*Commonwealth v. Whitehead*, 629 A.2d 142, 143 (Pa. Super. 1993) (holding that officer was required to provide *Miranda* warnings to person while lying on a hospital gurney within the confines of a hospital when he asked questions designed to obtain incriminating statements).

Appellant's reliance on *Whitehead* is inapposite. In *Whitehead*, we applied the focus of the investigation analysis which was called into question by the Supreme Court's decision in *Beckwith v. United States*, 425 U.S. 341, 347-348 (1976), and later rejected by this Court. *See, e.g., Commonwealth v. Ellis*, 549 A.2d 1323, 1332 (Pa. Super. 1988) (concluding that "the only restraints upon [defendant's] freedom were those caused by his medical condition, as opposed to any action on the part of the police"); *see also Commonwealth v. Fento*, 526 A.2d 784, 788 (Pa. Super. 1987) (questioning defendant in an open area of hospital not custodial despite the confinement of suspect to a hospital bed). The mere fact that law enforcement asked questions designed to obtain incriminating statements is not the focus. *See Perry*, 710 A.2d at 1186 (noting that this is a relevant factor, but not the only factor used to determine whether a suspect is "in custody"). More recent precedent clarifies:

> The overriding concern of this Court is to determine what was the reasonable belief of the accused during the questioning. Although a factor, the motive of the trooper, specifically, whether the accused was the focus of a criminal investigation, is not the central issue.

*Perry*, 710 A.2d at 1186.

The test for determining whether a suspect is subject to a custodial interrogation so as to necessitate *Miranda* warnings is whether, under the totality of the circumstances, "he is physically deprived of his freedom in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by such interrogation." *Commonwealth v. Mannion*, 725 A.2d 196, 200 (Pa. Super. 1999) (citations omitted). The fact that a suspect was questioned in the confines of a hospital setting does not necessarily render the interrogation custodial in nature. *See Ellis*, 549 A.2d at 1332 (defendant's restraint of freedom of movement due to medical condition did not constitute custody under the totality of the circumstances). "[P]olice detentions only become 'custodial' when, under the totality of circumstances, the conditions and/or duration of the detention become so coercive as to constitute the functional equivalent of formal arrest." *Ellis*, 549 A.2d at 1332.

In *Perry*, for example, this Court affirmed the trial court's denial of a defendant's motion to suppress statements made under circumstances similar to those present here. *Perry*, 710 A.2d at 1185-86 (describing how trooper learned from medical personnel that they had noticed the odor of alcohol on the defendant's breath and followed up on the automobile investigation by proceeding to the hospital to question the defendant pursuant to standard police practice). "In gathering information in regard to the accident the trooper noticed 'first hand' the odor of alcohol on [the defendant's] breath and

questioned him in that regard." *Id.* at 1187. During questioning, the defendant "was lying on his back on a gurney, wearing a neck brace, and had intravenous tubes in his arms." *Id.* at 1185. Upon review, this Court held that the restrictions to the defendant's physical movement, brought on by his medical condition, did not render the investigation "custodial" in nature. *See id.* at 1186-87 (noting the presence of medical personnel and family members).

Here, Appellant was laying on a hospital bed, having recently suffered extensive injuries; he was connected to medical equipment monitoring his vital signs. Appellant's father was present at the time of the questioning. N.T. at 34. The suppression court found that Appellant was not shackled or tethered, nor under arrest at the time. *See* TCO at 9. After detecting the odor of alcohol on Appellant's breath, the Trooper inquired of Appellant how much he had been drinking. *Id.* at 10. Appellant responded that he had consumed four alcohol beverages. *Id.* The court concluded that Appellant was not in custody, as he was free to stop the questioning at any time. *Id.* Moreover, there was no evidence that Appellant was deprived of his freedom of movement, by Trooper Rummerfield, in any significant way. *Id.* Because Trooper Rummerfield made no threats and had not determined to place Appellant in custody, his inquiry was merely investigatory. The court concluded Appellant was subject to a mere investigative detention and that *Miranda* warnings were not required. *Id.*

The record supports the suppression court's findings. As these findings do not establish that Appellant had a reasonable belief that he was subject to a custodial interrogation, we discern no error in the court's decision. ***See Perry***, 710 A.2d at 1186; ***Ellis***, 549 A.2d at 458.

Judgement of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/30/2017